## Court of Appeals.

June, 1905.

## Supreme Court—Appellate Division—First Department.

March, 1905.

## THE PEOPLE v. EDWARD E. CONRAD.*

(182 N. Y. 529, affirming 102 App. Div. 566.)

1. ATTEMPT TO COMMIT ABORTION.

The evidence showed that the defendant was visited by two women detectives in the employ of the County Medical Society; that he was told, in effect, that one of the women wanted an abortion performed upon her; that he ultimately agreed to perform the abortion; that upon the appointed day he sent a nurse, who made all preparations for the intended operation; that he appeared at the time and place appointed with a satchel containing surgical instruments by which an operation could be accomplished; that the woman was about four or five months pregnant; that the defendant was paid $125 in marked bills; that he arranged his instruments, placed the woman upon an operating table, sterilized his hands and instruments and cleansed the woman's person by means of a syringe; that he next took a speculum which was used for the purpose of enlarging the vagina and of enabling the operator to obtain a view of the womb. With this speculum in his hand he turned toward the woman, whereupon the signal was given and he was placed under arrest. *Held*, that the defendant was properly convicted of an attempt to commit abortion.

2. ATTEMPT—PENAL CODE, SECTION 34.

The intent to commit a crime is not alone sufficient under section 34 of the Penal Code to justify a conviction; it must be accompanied by some overt act, or the crime is incomplete. The test is the condition of the actor's mind and his conduct in the attempted consummation of his design.

3. ATTEMPT—NATURE OF OVERT ACT.

In order to constitute an attempt, the overt act need not be the final one toward the completion of the offense and of such a character that, unless it had been interrupted, the offense itself would have been committed. But where the intent to commit the crime exists, an act done in the process of a consummation of the offense and of

* See note on Traps and Attempts, *infra*, p. 294.

such a character that in the ordinary course the crime would have been consummated, had not the interruption intervened, is a sufficient overt act to justify a conviction for an attempt.

4. TRAPS AND DECOYS.

Where defendant claims that he was lured into the commission of overt acts, but the fact is that he was not a passive instrument in the hands of the entrapping parties but did the act with which he was charged voluntarily, with full knowledge of the subject and of the consequences which would flow therefrom, the setting of a trap by which he was caught is not a defense.

APPEAL by the defendant, Edward E. Conrad, from a judgment of the Court of General Sessions of the Peace in and for the city and county of New York in favor of the plaintiff, entered on the 8th day of April, 1904, convicting the defendant of the crime of attempting to commit the crime of abortion.

James W. Osborne, for the appellant.

Robert C. Taylor, for the respondent.

HATCH, J.: The conviction of the defendant was brought about by means of a trap arranged by the officers of the county medical society. It is claimed that as the defendant was lured into the commission of the claimed overt acts he cannot be punished therefor. This contention has recently been the subject of examination by this court and by the Court of Appeals and decided adversely to the contention of the defendant. He was not a passive instrument in the hands of the entrapping parties. He did the act with which he was charged voluntarily, with full knowledge of the subject and of the consequences which would flow therefrom. Under such circumstances setting a trap by which he was caught is not a defense. (People v. Mills, 91 App. Div. 331; 18 N. Y. Crim. 125; affd. on appeal, 178 N. Y. 274; 18 N. Y. Crim. 269.) The evidence upon the trial tended to show that one Minnie Levine, after a conversation

with one Andrews, the attorney for the county medical society, visited the defendant at his office 127 West Forty-seventh street, on February 2, 1904. She informed the defendant that she was in the family way; that she had one child, thirteen montns of age, and did not have sufficient means to support another; that she did not want to have any more children and asked him how much he would charge for an operation upon her person. Defendant asked her if she wanted to come to his house and she told him that she would rather not because she would be likely to be missed away from home. The defendant then told her to call again the next day. Upon the following day this woman called upon the defendant in company with a Mrs. Blocher, the wife of a detective, who had also previously acted as a detective in other matters, and was then being paid a consideration for her services in this case. This woman was introduced by Mrs. Levine as her sister-in-law and represented that she lived at 14 West Sixty-fifth street, in the city of New York, where a flat had been engaged. In fact she lived at 518 Lexington avenue, Brooklyn. These two women testified to a further conversation respecting the performance of the operation, and finally the defendant agreed to perform it for $125—$100 for himself and $25 for the nurse, and he was to go to 14 West Sixty-fifth street, where the Blocher woman was represented to live. At about eleven o'clock on the twelfth day of February following these interviews the defendant sent a nurse to the house No. 14 West Sixty-fifth street. She prepared a table for an operation by arranging blankets, sheets and pillows upon it, procured some water to be boiled upon the stove, to be used for purposes of sterilization; caused Mrs. Levine to remove her clothing and put on a nightdress. At this time two detectives, O'Connell and Reardon, were concealed in a bedroom in this flat adjoining the room where the nurse had prepared the table. About twelve o'clock the defendant arrived carrying a bag, from which he produced and placed upon a chair near the table

a case of instruments, consisting of a pair of scissors, three rubber bougies, a sound or probe, a speculum, a bottle of gauze, two bottles, one containing white tablets, a pair of dressing forceps, a cloth strap and a rubber bag. It was shown by competent testimony that Mrs. Levine was about four or five months pregnant with a living child. Shortly after the arrival of the defendant at the flat, Mrs. Blocher produced and paid him $125 in bills which were marked. Thereafter the defendant placed Mrs. Levine upon the table, drew up her legs so that her knees rested upon her chest, and strapped her in a position known to the medical fraternity as the " dorsal " or " lithotomy " position. Having thus placed her, he sterilized his instruments and hands by means of the boiling water, and proceeded to use a syringe for cleansing the person of the woman. It had been arranged between the concealed detectives and Mrs. Levine that the latter should give a signal when they were to come in and interrupt the process. After having syringed the parts, the defendant took in his hands a speculum, which was used for the purpose of enlarging the vagina and enabling the operator to obtain a view of the womb. With this speculum in his hand the defendant turned toward the woman, when the signal was given, the detectives entered the room, placed the defendant under arrest, demanded that he deliver to them the $125 in bills, which he did, and at their request he gave them the names of all of his instruments; the woman was unstrapped and left the table, and the defendant was removed under custody.

It sufficiently appeared from the evidence that the instruments which the defendant produced and laid upon the chair and sterilized could be used to perform an abortion. Upon such subject the People were held to an extremely rigid rule of evidence, but sufficient appeared to show that the position in which the woman was placed and the instruments produced, if used in ordinary course to final consummation, would have resulted in producing an abortion. There is no conflict in the

evidence with respect to what the defendant did.    The dispute comes to rest upon the character of the act and the purpose and intent which the defendant had in doing it.    The defendant denied that he did any of the acts with intent to commit an abortion upon the person of the woman.    He denied in terms that he had ever been applied to for any such purpose, but claimed that the woman applied to him for treatment for an abscess or other disorder of her private organs, and that it was for that purpose, and that alone, that he was engaged in treating her; that all the acts which he did were proper and appropriate for such treatment; that he had no knowledge as to whether the woman was pregnant or not, or what the nature of her disorder was at any time, and that his examination had not progressed sufficiently far to enable him to determine whether the woman was pregnant or what the nature of the disorder was when he was arrested.    We have carefully gone over the testimony and reached the conclusion that the evidence was sufficient to justify the jury in finding against the defendant upon this issue; that the question thus presented became one of fact, and the evidence is sufficient to support the verdict which was based thereon.

This brings us to the legal questions presented by this record. Section 294 of the Penal Code defines the crime of abortion in these words: " A person who, with intent thereby to procure the miscarriage of a woman, unless the same is necessary to preserve the life of the woman, or of the child with which she is pregnant, either. . . . 2. Uses, or causes to be used, any instrument or other means." The other provisions of this section are not applicable to the facts appearing in the record. Section 34 of the Penal Code provides: " An act, done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime." The intent to commit a crime is not sufficient alone to justify a conviction for such offense.    It must be accompanied by some overt act,

or the crime is incomplete. It is claimed by the learned counsel for the appellant that the defendant did no act and used no instrument which tended to produce an abortion upon the person of the woman, and that, to quote his language, " wherever the accomplishment of a crime requires the use of an instrument, the instrument must be one that is suitable to the completion of the crime." The argument then proceeds to show that the defendant did not use any instrument which could in and of itself, in the use to which it was put, produce an abortion, and that the acts done by the defendant not only could not have completed the act of abortion, but were means and instruments used innocuous in themselves, and in their use did not proceed beyond the point of a lawful act consistent with an intent to discover the woman's disorder; that he did not even know that she was pregnant. The logic of the argument requires us to hold that until the defendant had made use of some instrument by which the crime could have been committed, he was guilty of no act within the express terms of the indictment constituting an offense. The language of the indictment charged that the defendant, with intent, etc., " did feloniously attempt to use, and to cause to be used, certain instruments, . . . and with the same intent did then and there feloniously attempt to force, thrust and insert the same, and to cause the same to be forced, thrust and inserted upon and into the womb " of the woman. The argument is not new in criminal law. It has always been, and doubtless will continue to be, the subject of discussion whenever the application of the rule to be observed is difficult and obscure by reason of the facts. Courts have divided upon the subject as to whether the overt act contemplated by the statute must be the last one essential to constitute proximate cause in the commission of an offense, or, where there are a series of acts necessary to be done to commit the crime, whether any one of these acts may be laid hold of as sufficient in law to constitute the overt act which the law requires.

Upon this subject, it was said by the Court of Appeals, speaking through CULLEN, J.: "The question of what overt act is sufficient to constitute an attempt to commit a crime has been the subject of much discussion by both text writers and courts, and of some conflict in the decisions. In the early English cases, the view seems to have been adopted that to constitute an attempt the overt act must be the final one towards the completion of the offense and of such a character that, unless it had been interrupted, the offense itself would have been committed. The decisions in some of these cases seem to have been based on the phraseology of the particular statutes under which the indictments were framed. This extreme doctrine has not been accepted in this country, certainly not in this State. . . . '*The question whether an attempt to commit a crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design.* So far as the thief is concerned, the felonious design and action are then as complete as though the crime could have been, or, in fact, had been committed, and punishment of such offender is just as essential to the protection of the public, as one whose designs have been successful.'" (People v. Sullivan, 173 N. Y. 122; 17 N. Y. Crim. 180.) In People v. Mills (178 N. Y. 274; 18 N. Y. Crim. 269), it was said by VANN, J.: "An overt act is one done to carry out the intention, and it must be such as would naturally effect that result, unless prevented by some extraneous cause." In speaking of the particular case then under consideration, the learned judge states: "If the defendant did anything with intent to steal the papers which, in the ordinary course of events, unless interfered with, would have resulted in the theft thereof, it was an overt act "— citing as authority People v. Sullivan (*supra*). In both of these cases it is noticeable that the test is the condition of the actor's mind and his conduct in the attempted consummation of his design. In the present case the intent having

been found to exist, and the necessary instruments having been present with which the act could be performed, and thereby the design accomplished, the use of other means necessary to lead up to the final use of an instrument which would work a consummation, seems to us to bring the case fairly within the rule of law which tests and characterizes such action. The Mills case (*supra*) is, as we construe it, quite as decided a case against the defendant as is the Sullivan case. There, as here, there were a series of acts to be done before the crime could be completed. The first attempt was to corrupt Meloy, then to obtain money from Dr. Flower, then to bribe the assistant district attorney and Brindley to procure the indictments. Not one of these acts standing alone would have enabled the defendant to procure the indictments save the last act, when they came to his manual custody. The whole series of acts, however, were connected parts of the scheme and designed to result in the commission of the crime. Each was an overt act, and it is the doing any one of those acts, when coupled with the intent to make use of them for the accomplishment of the wrongful purpose, that constituted the offense. In this case, placing the woman upon the table in a position to be operated upon was a distinct overt act, necessary and essential to enable the defendant to produce the abortion. The subsequent acts done by him were each in turn and in ordinary course means to an end, and followed out to a final conclusion would consummate the intended crime. We think, therefore, the intent to commit the crime existing, that the overt acts were done in the process of a consummation of the offense, and in ordinary course the crime would have been consummated had not the interruption intervened before the offense was complete. Therefore, any one of those acts, having been coupled with the intent to commit the crime, was sufficient to constitute the offense charged in this indictment in manner as charged. The defendant was, therefore, properly convicted.

In this view the charge of which complaint is made was correct. There was no error in the refusal to charge the defendant's first request. It was covered in its entirety in the main body of the charge, and the court was not again called upon to repeat it. The third request to charge, which was urged upon our attention, was charged in the very language under a former request and saved every right of the defendant upon the subject to which it referred, its language being: "Before the jury may convict the defendant they must be satisfied beyond a reasonable doubt that the acts of the defendant were, as a whole, inconsistent with his innocence." We have examined all the other questions raised by the learned counsel for the defendant and find no error therein.

The judgment of conviction seems to have been justified by the evidence, and as no errors of law appear, it should be affirmed.

VAN BRUNT, P. J., INGRAHAM, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Judgment affirmed.

NOTE.—An appeal was subsequently taken to the Court of Appeals. The matter was argued upon June 5, 1905, and decided June 16, 1905. The memorandum of opinion (182 N. Y. 529) is as follows:

"Appeal from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered March 13, 1905, which affirmed a judgment of the Court of General Sessions of the Peace in and for the county of New York, rendered upon a verdict convicting the defendant of the crime of attempting to commit an abortion.

James W. Osborne, Howard Taylor and Otto T. Hess, for appellant.

William Travers Jerome, District Attorney (Robert C. Taylor, Assistant District Attorney, of counsel), for respondent.

Judgment of conviction affirmed; no opinion.

Concur: CULLEN, Ch. J., GRAY, HAIGHT, VANN and WERNER, JJ. Dissenting: O'BRIEN and BARTLETT, JJ."