No. 15,161.

SCHIFF *v.* THE PEOPLE.
(141 P. [2d] 892)

Decided September 13, 1943.

Mr. LEO S. MOSES, Mr. REID WILLIAMS, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, to whom we hereinafter refer as Schiff, has sued out a writ of error in this court seeking to reverse a judgment of conviction against him whereby he was found guilty of larceny as bailee and sentenced to imprisonment for a term from eight to nine years in the state penitentiary. By a second count of the information filed against him he was charged with feloniously receiving stolen goods, but as to this count the jury returned a verdict of not guilty.

The record shows that Schiff was engaged in the junk business in Denver, and that on several occasions during the month of April, 1941, he purchased copper wire from one Calabrese. Schiff, becoming suspicious of the source of the wire, made a written notation of the license number of the Calabrese car and reported his suspicions to the police, who subsequently traced the source of the wire and arrested Calabrese. Calabrese pleaded guilty

and was sentenced to the state reformatory, but was granted probation.

The first three purchases made by Schiff from Calabrese were small items, but the last one involved 468 pounds of copper wire for which Schiff paid $37.44, and it was on this item that he was arrested and convicted. The man who verified the information against Schiff was one Wicker, manager of the Western Machinery Company from which the copper wire was allegedly stolen, and of which Calabrese was an employee.

April 21, 1941, members of the Denver police department attached a red tag to the 468 pound spool of wire, which was in Schiff's possession, upon which was printed "Denver Police department. Hold this for police release. By order of Denver Police Dept., By Officers A. A. Hughlitt, V. E. Lyreman. Date 4-21-41." It is not disputed that the hold order had not been released at the time of Schiff's trial.

There is a considerable amount of testimony in the record concerning the question of whose duty it was to make demand for the release of the wire, and some conversation between Wicker, Schiff, the District Attorney and even the Trial Judge, concerning the matter appears in the record. There is innuendo at least that it was the custom of the police department not to release stolen property until a compromise settlement had been made between the person from whom the property had been stolen and the person who purchased it. We make no comment, nor do we pass judgment upon the alleged custom, although it seems to be conceded that legally the "hold order" was without authorization.

■ ■ While there are a number of assignments of error, we deem it necessary to consider only one, viz., that the trial court erred in denying Schiff's motion for a directed verdict.

We know of no law, and none is cited by counsel, that will sustain a conviction based upon evidence such as we find in this record, and the case should not have

been submitted to a jury. It may be true that the "hold order" has no legal basis of support, but the undisputed testimony here is that the police department, at the request of Wicker, directed Schiff to hold the wire involved in this case.

The Attorney General's theory here is that because (according to Wicker) Schiff was asking that he be reimbursed for the money he paid for the wire, that that prima facie constitutes a crime under the statute, which reads: "If any bailee, by finding or otherwise of any money, bank bill, or note, or goods or chattels, shall convert the same to his or her own use with an intent to steal the same, he shall be deemed guilty of larceny in the same manner as if the original taking had been felonious, and on conviction thereof shall be punished accordingly." '35 C.S.A. c. 48, §97. Whether Schiff would have been guilty of a crime without the "hold order" we are not called upon to determine, and that is the only law relied upon to sustain this conviction. We think it has no application here.

Assuming demand was made by Wicker for the return of the wire and that Schiff refused, we have held: "When refusals are not absolute, but are qualified by certain conditions which are reasonable, and which are imposed in good faith and in recognition of the rights of plaintiff, such refusals are an insufficient basis for an action in conversion." *Obodov v. Foster*, 105 Colo. 254, 257, 97 P. (2d) 426. The hold order was a condition imposed by the police for the benefit of Wicker, the complaining witness, and Schiff should not be penalized for following the instructions of the police, even though it later develops that the police instructions had no legal basis in fact. His retention of the property in reliance upon the police order does not constitute an "intent to steal," which is one of the essential elements of the crime under the statute.

No case is cited, nor have we been able to find one, that is directly in point on the situation at hand, but it

has been held that "the pendency of an injunction restraining the enforcement of a municipal ordinance is a complete defense to a prosecution for the violation of such ordinance." 22 C.J.S. 118. The "hold order" was, so far as the defendant is concerned, in the nature of an injunction, i.e., he could not dispose of the property until the "hold order" was lifted. Even assuming that the "hold order" was invalid as against section 1439 Denver Code, 1927, relating to pawnbrokers, the defendant was not being prosecuted for a violation of the ordinance, but under the rule above quoted, a fortiori he could not be guilty of violating a statute, which in substance made the violation of the ordinance a crime.

It is admitted that the "hold order" was promulgated by the manager of safety of Denver, who is ex officio sheriff, and it has been held that "where a bailee of a sheriff received from him personal chattels * * * giving an accountable receipt, with a promise to redeliver the same on demand * * * the bailee had no such special property in the chattels as to support an indictment." Wharton's Criminal Law (12th ed.) vol. 2, p. 1501, §1183.

Judgment reversed.

MR. JUSTICE KNOUS not participating.