Johh J. Walsh, J.
In these two appeals, this court is asked to reassess the so-called “ defense of entrapment doctrine ” as it has been traditionally recognized in New York State in view of the 1932 decision by the United States Supreme Court in Sorrells v. United States (287 U. S. 435) and subsequent cases.
The Williams case involves alleged inducement by a police officer decoy to commit prostitution.
*81 The Freeman case involves alleged inducement by a police officer decoy to commit prostitution, which inducement was inspired by information gleaned from a wiretap. It is claimed that the resulting conviction was thus the fruit of a tainted tree.
Defense of Entrapment
The defendants argue that there has been an erroneous acceptance of the contention that the defense of entrapment was not recognized in New York State.[1] They further contend that even though age and general acceptance may have given legal validity to an erroneous doctrine which found its origin in Board of Commrs. of Excise v. Backus (29 How. Pr. 33 [1864]) and in some subsequent opinions,[2] the time has arrived to reappraise that rejection in the light of Federal court decisions since 1932.[3]
It is sound public policy to seek to prevent rather than aid the commission of crime. “ The liability of men to fall into crime by consulting their interests and passions is unfortunately great, without the stimulus of encouragement. No state, therefore, can safely adopt a policy by which crime is to be artificially propagated.” (Commonwealth v. Bickings, 12 Pa. Dist. Rep. 206, 207.)
Section 2 of the Penal Law defines as a “ principal ” “ A person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a ‘ principal.’ ”
It is a principle of law that in those cases involving a violation of individual rights of a person, an entrapment must not be under such circumstances as will amount to the consent of the person affected. If want of consent of the person is an element of a crime, an act done with consent of that person cannot be made the basis of a criminal charge.[4]
*82 To what extent the courts should permit entrapment in order to prevent or punish crime constitutes a question of morality as well as law.
In People v. Mills (178 N. Y. 274) the original intent to cause the removal of indictments from the files of the District Attorney arose in the mind of the defendant during a conversation with a decoy sent to him with the knowledge of the prosecutor. The indictments were taken with permission of the court and were eventually delivered to the defendant.
The majority of the court held (p. 288) that since the defendant “ proposed the scheme and put in motion the forces by which the indictments were actually removed from the files of the court and delivered to him ” he was guilty as a principal. The majority further held (p. 284) that “the records were the property of the state, not of the district attorney, and that the latter could not lawfully give them away or permit them to be taken by the defendant.”
On the question of the entrapment of the defendant and the morality of the means used, the majority said (p. 289): “ While the courts neither adopt nor approve of the action of the officers, which they hold was unauthorized, still they should not hesitate to punish the crime actually committed by the defendant. It is their duty to protect the innocent and punish the guilty. We are asked to protect the defendant, not because he is innocent, but because a zealous public officer exceeded his powers and held out a bait. The courts do not look to see who held out the bait, but to see who took it.”
There were strong dissents by Judge 0’Brisk and Judge Bartlett. Judge O’Brien said (p. 301): “If the prosecuting officers of the state can tempt every evil-disposed person into overt criminal acts and then prosecute them, there is an opportunity, doubtless, to fill the prisons to overflowing. But I think we ought not to approve of that at the expense of destroying fundamental maxims of the law.”
Judge Bartlett wrote (p. 309): “A sound public policy requires that the state of New York should be estopped, as is a private individual, who seeks to induce a person by scheme or device to commit a crime.
“ It well comports with the dignity of the state to say that it repudiates this action of its officials and permits this defendant, although unworthy, to go free, because he stands convicted of a crime which he never would have committed save by the assistance of those who on this occasion, however proper their motives, have misrepresented it.”
*83 Thi-s court is of the opinion that the Mills case did not outlaw a defense of entrapment in New York State as has been generally assumed, but rather that this defense was rejected in this particular case upon the criterion of “ origin of intent ” which the court found in the mind of the defendant and not in the mind of the prosecutor or the decoy.[5] A careful reading of the record in that case sustains this finding.
In the next case to come before the New York courts, People v. Conrad (102 App. Div. 566, affd. 182 N. Y. 529) the defendant was thought to be engaged in committing abortions.
“ The conviction of the defendant was brought about by means of a trap arranged by the officers of the county medical society. It is claimed that as the defendant was lured into the commission of the claimed overt acts he cannot be punished therefor. This contention has recently been the subject of examination by this court and by the Court of Appeals and decided adversely to the contention of the defendant. He was not a passive instrument in the hands of the entrapping parties. He did the act with which he was charged voluntarily, with full knowledge of the subject and of the consequences which would flow therefrom. Under such circumstances setting a trap by which he was caught is not a defense. ’ ’ (102 App. Div. 566, 567-568)
Unlike the ‘‘ origin of intent ’’ test of entrapment exemplified by the Mills case, the Conrad case turned upon the “ pre-disposition of the defendant to commit the offense ” if the opportunity presented itself.[6] The mere fact that the public officials provided the opportunity for the defendant was held not to constitute a defense.[7]
The courts have recognized that there are certain types of criminal activity which by their very nature are committed secretly. Gambling[8], prostitution[9] and the sale of narcotics[10] are examples of such offenses. Such offenses are extremely difficult to detect and almost impossible to punish without some degree of active participation and inducement by a government agent.[11]
*84 An examination of the case law in this State leads this court to the conclusion that a defendant has a perfect right to raise as a factual issue, a defense of entrapment.
It is readily conceivable that situations will arise wherein as a result of compulsion, duress, deceit, misrepresentation, or constant pressure a defendant might be entrapped into the commission of crime.[12] No civilized and moral society could countenance such a conviction.
On the other hand, where the criminal intent originates initially in the mind of a defendant, the fact that the police officers used decoys or furnished an opportunity for or to aid the accused in the commission of a crime in order to prosecute him therefor constitutes no defense on the ground of entrapment.[13]
Likewise, it is not entrapment to furnish an opportunity to a person who is ready and willing to commit an offense whenever the opportunity presents itself.[14]
There is a new concept of entrapment urged by which the courts are asked to adopt an objective test, whereby the court will consider only the nature of the police activity involved, without reference to the “origin of intent” or “predisposition of the particular defendant. ’ ’ Thus, police conduct which ‘ ‘ falls below standards, to which common feelings respond, for the proper use of governmental power ” would bar a conviction.[15]
To what extent New York State is now prepared to adopt such a test must remain for a court of final review to rule, and not for a court of intermediate appeal to surmise.[16] This court must content itself with reviewing this record on the basis of the present tests and as a factual issue.
The transcript of testimony in the Williams case indicates that the police officer went to a bar in the City of Utica to act as a decoy for defendant who was pointed out to him by a detective. The officer stood next to the defendant and started a conversation with her and bought her a drink. He told her he was a book salesman, selling encyclopedias and that he was looking for someone to help sell them. He told her that he had been out with a girl the evening before and that he paid her $8. There was further testimony that the defendant told him, she had a son *85 and the officer told her that he might be able to use her son in his business and that he would like to talk to him sometime and that thereafter he went with her to her apartment after paying her $10.
The defendant testified that the officer said: “I’ll give you ten dollars for us to go out and have some fun ’ ’; that he gave her $10 which she took and left the grill. She testified that later when she got home, the officer was in the hallway and asked to see her son; that she went upstairs with him to her rooms and that she was told to remove her dress; that she was scared and complied and the officer then arrested her.
In the Freeman case, the testimony disclosed that Trooper Peo of the State Police, as the direct result of a wire tap placed on a telephone line pursuant to a court order received information that the defendant was engaging in acts of prostitution at her home. He, thereupon, made a telephone call to the number listed to Mrs. Freeman and talked to a fem'ale voice which he could not identify and made an appointment to see her at 10 o ’clock that evening.
That evening he went to the home of Mrs. Freeman. The defendant received him and asked him “ are you Frank ” and Trooper Peo said he was. The defendant then asked him several questions, said she wanted $10 and the Trooper gave her two marked $5 bills. She removed part of her clothes and the trooper thereupon arrested her. In a subsequent conversation the defendant stated that she had been engaged in a few acts of prostitution, but not very much and asked that she be released.
There was some corroborating evidence by other police officers who entered upon the signal of Trooper Peo.
The defendant did not present any defense testimony and rested with a claim of a violation of defendant’s constitutional rights.
It is not entrapment to commit a criminal offense where the police merely furnish an opportunity to a person who is ready and willing to commit an offense. If the officer has reason to believe that the law is being violated, he may proceed to ascertain whether those who are thought to be doing so are actually committing an offense against society. As long as the officer is acting in good faith upon reasonable grounds in an honest belief that a defendant is engaged in an unlawful enterprise and the purpose of the officer is not to induce an innocent person to commit a crime but to secure evidence against a guilty person, the defense of entrapment is without merit.[17]
*86 It is not entrapment in a prostitution case where a police officer secures ready acquiescence by a defendant and the defendant was not overly persuaded or put under any compulsion of any description, the only deception practiced upon defendant being that the person with whom she expected to unlawfully associate was a police officer, and such decoy did no more than others seeking to avail themselves of the opportunity to so associate and the defendant did exactly what she would have done in any other instance.[18]
Reviewing the testimony in the Freeman case, it is apparent that the defendant readily acquiesced and was not persuaded in any manner except by the money tendered to her. She admitted previous acts of prostitution to the officer and apparently relies more upon the claim of an invasion of her constitutional rights by the use of wire tap information, than upon the defense of entrapment.
The transcript of testimony indicates that the trooper received information as to the alleged unlawful activity of defendant as the result of a wire tap, pursuant to a court order upon a telephone line other than that of the defendant. Thus, a serious question is presented as to what violation of defendant’s constitutional rights occurred in the tapping of some other telephone line than her own.
In any event, the case of People v. Dinan (11 N Y 2d 350) is controlling on the admissibility of State-obtained wire taps into evidence in criminal trials in State courts notwithstanding section 605 of the Federal Communications Act. Here there was no wire tap received nor did the conviction rest upon such evidence. The sole question raised is whether the conviction is the fruit of a tainted tree. Obviously, an untainted tree produces good fruit.
The conviction in the Freeman case is affirmed.
Reviewing the testimony in the Williams case, the credible testimony supports the conviction. The offer of money is always an inducement. The testimony of the defendant acknowledges the offer and receipt of the money in the bar for the purpose of prostitution although defendant denies any purpose on her part to so act. Overpersuasion cannot be found as a matter of law in this case and the alleged compulsion to remove her clothes is not persuasive.
The conviction in the Williams case is likewise affirmed.
The sentence imposed by the trial court in the Freeman case was a sentence of six months in the Oneida County Jail, which *87 sentence was suspended, and the defendant was placed on probation for six months.
The sentence imposed by the trial court in the Williams case was two months in the Oneida County Jail. The execution of this sentence was stayed by a Supreme Court Justice upon an application for a certificate of reasonable doubt.
In view of the similarity of the two cases, the sentence imposed in the Williams case should be modified to conform to that of the Freeman case.
The judgment of conviction in the Williams case is modified to the extent of suspending the execution of the sentence and placing the defendant on probation for six months.

. “ The Defense of Entrapment and Related Problems in Criminal Prosecution” (28 Fordham L. Rev. 399, 400 n. 6); People v. Frank (176 Misc. 416 [Utica City Ct., 1941]).

. People v. Krivitzky (168 N. Y. 182 [1901]); People v. Mills (178 N. Y. 274, 289 [1904]; People v. Conrad (102 App. Div. 566 [1st Dept.], affd. 182 N. Y. 529 [1905]).

. Sorrells v. United States (287 U. S. 435, 451 [1932], supra); Sherman v. United States (356 U. S. 369, 382 [1958]).

. People v. Frank (176 Misc. 416, supra [larceny] ); cf. People v. Krivitsky (168 N. Y. 182, supra [counterfeit labels]; People v. Mills (178 N. Y. 274, supra [no authority in District Attorney to permit removal of indictments from file]).

. Sorrells v. United States (287 U. S. 435, 451, supra [1932]; see “ Entrapment ”, 73 Harv. L. Rev. 1333 [1960]; People v. Du Veau (105 App. Div. 381 [1905] [robbery]).

. United States v. Sherman (200 F. 2d 880, 882 [C. A. 2d, 1952]).

. People v. Moore (142 App. Div. 402, affd. 201 N. Y. 570 [1911]).

. “Entrapment to commit offense with respect to gambling or lotteries” (Ann. 31 A. L. R. 2d 1212).

. "Entrapment to commit sexual offense” (Ann. 52 A. L. R. 2d 1194).

. “Entrapment to commit offense with respect to narcotics law” (Ann. 33 A. L. R. 2d 883).

. Judge Leashed Hahd, in United States v. Sherman (200 F. 2d 880, 882).

. See People v. West (139 Cal. App. 2d 923). In this case, there was constant pressure and entreaty for over a month’s time by a police officer and the defendant yielded to him only in an effort to get rid of him.

. People v. Du Veau (105 App. Div. 381, supra [1905]).

. People v. Conrad (102 App. Div. 566, affd. 182 N. Y. 529, supra).

. See “Entrapment”, 73 Harv. L. Rev. 1333 (1960); Sorrells v. United States (287 U. S. 435, 451, supra [1932]); Sherman v. United States (356 U. S. 369, 382 [1958]).

. People v. Reed (276 N. Y. 5, 9).

. Sutton v. State (59 Ga. App. 198, 200).

. State v. Foster (75 N. E. 2d 214 [Ohio]).