John M. Friedman, J.
Late one Sunday afternoon in November, 1966, the Scarsdale police received a telephone call from a homeowner asking that they investigate an auto which, in suspicious fashion, had been parked in the driveway of the home. A police radio car with two patrolmen was dispatched. At the scene, the police found the car as reported, with defendant sprawled across the front seat. It was quite apparent that she had “ passed out ”, after having thrown up.
The police roused the lady and requested identification. Chafing at the interruption of her slumber, defendant railed at the police in language which accorded with a lack of sobriety. The police consulted with the homeowner, who declined to make a *688 formal complaint, but who thought it would benefit the neighborhood if the removal of defendant were speedily accomplished.
The police then addressed defendant: “Lady, you’re on private property; you can’t stay here; you’ll have to leave.” ■She declined the latter’s suggestion with vigor. The police then left, and, possibly with gallant concern for defendant’s well-being, parked their car a block away where they could keep an eye on the driveway.
Sure enough, moments later defendant backed out of the driveway and literally drove into the arms of the police, who arrested her and brought her to the station house. A blood sample was taken, and she was charged with operating her vehicle while her ability to operate was impaired by the consumption of alcohol, a violation of subdivision 1 of section 1192 of the Vehicle and Trafile Law.
Defendant testified that she had left friends in Pelham earlier on the afternoon in question, where she had had three Scotches and soda and some roast pork and a baked potato. This excellent nourishment apparently did not agree with her, and, while driving to her home, she felt nauseous. She pulled off the main road onto what she thought was a side road, where she parked. The side road was, of course, the driveway mentioned. Some driveways in Searsdale do look like public roads.
Defendant, as has been indicated, did become ill, and, knowing she was in no condition to drive, lay her down to sleep. When she was awakened, it seemed to her, so she said, that there were multitudes of people around, and lights flashing all over the place. She was abusive because she was embarrassed. She was confused and after the police told her she had to leave, she decided she would oblige them. However she said she would not have left had the police not said what they did.
The proof is clear that defendant did operate a motor vehicle while her ability to do so was impaired by alcohol (after she had parked, not before, as to which prior time the evidence is inconclusive). She argues that she was entrapped and that the charge should be dismissed. The defense of entrapment will be a good one on and after September 1, 1967 (section 35.40 of the new Penal Code, to take effect then), although it is questionable whether the defense has been recognized in New York before then (see People v. Williams, 38 Misc 2d 80). As the new section provides, however, the defense is good only when the defendant was induced or encouraged to engage in the proscribed conduct by one seeking to obtain evidence for the purpose of criminal prosecution. I cannot find in this case that the police had this motive in their dealing with defendant.
*689 Section 1102 of the Vehicle and Traffic Law should he considered. “ No person ”, it reads, “ shall fail or refuse to comply with any lawful order or direction of any police officer ”. But what the police stated to defendant here hardly rose to the level of an order or direction; neither would I hold that a policeman could lawfully order a drunken person to drive away.
It occurs to me that in the area of criminal law the public authorities may be estopped to prosecute. In equity, said the Supreme Court, “ he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden ”. (Dickerson v. Colgrove, 100 U. S. 578, 580.)
There can be no doubt that defendant here was keenly disappointed in the actions of the police who suggested that she drive her car and then arrested her when she did. It may be said that defendant knew that she was not in fit condition to drive, and that she should have explained this to the police. But the average citizen does not argue with uniformed authority; when the law suggests “ Move on ”, the healthy instinct is to get going. Moreover, one in defendant’s condition cannot be expected to discuss with reasoned calm the merits and dangers of proposed action.
I have found no precedent in New York which would exonerate defendant in circumstances here presented. But the Colorado court in Schiff v. People (111 Col. 333) followed a parallel course. There, a junk dealer had innocently bought stolen goods, and, when he became suspicious, reported the fact to the police. The police told him to hold the goods. It later developed that the police had no authority to issue any such order, and defendant was prosecuted for possession of stolen goods. The court held that although all the elements of the statutory crime were present, the defendant should not be penalized for following the instructions of the police.
That estoppel should apply to the State in prosecuting for a crime is suggested in the dissent of Judge Bartlett in People v. Mills (178 N. Y. 274, 309). The contrary assertion in New York Jurisprudence (vol. 21, Estoppel Ratification and Waiver, § 76) does not appear to be supported by the authorities cited, except by way of dictum.
I presume to find that the doctrine of estoppel applies to the People of the State of New York. I find that the People should be estopped to prosecute this defendant, and, accordingly, I dismiss the charge.