STATE OF CONNECTICUT *v.* ALPHONSO MARSHALL

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 6-85510

Argued July 6—decided August 14, 1970

*George L. Richardson,* of New Haven, for the appellant (defendant).

*Philip E. Mancini, Jr.,* prosecuting attorney, for the appellee (state).

JACOBS, J. The facts as shown by the record are as follows: On April 25, 1968, the defendant was convicted in the Circuit Court in the sixth circuit of the crime of using a motor vehicle without the owner's permission in violation of § 14-229 of the General Statutes.[1] Acting under the broad powers conferred on him under § 14-111, the commissioner of motor vehicles suspended indefinitely the defendant's license and right to operate a motor vehicle in this state, effective on May 28, 1968. The defendant was notified of the "suspension notice" by certified mail as required by § 14-111 (a). On June 18, 1969, while the defendant's license and right to operate were still under suspension, Mrs. Lethia Marshall, the defendant's mother, applied for and obtained from the department of motor vehicles a so-called "home training certificate,"[2] and in the section on the certificate captioned, "learner's name (person to be instructed)," she filled in the name of Alphonso Marshall. On September 4, 1969, the defendant was operating a motor vehicle on the Boulevard, a public highway in the city of New Haven, and was not riding with nor accompanied by his mother.[3] He was arrested on two charges, (1) exceeding the posted speed limit in violation of § 13 of the city ordinance, and (2) operating a motor vehicle without a license (§ 14-36 [a]). Upon investigation by the prosecuting attorney, it was discovered that the

---

[1] For a first violation of the statute (§ 14-229), the maximum authorized penalty is a fine of not more than $1000 or imprisonment of not more than one year or both.

[2] See 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 105.

[3] Section 14-36 (a) provided that "any person over sixteen years of age who has not had such a [motor vehicle operator's] license suspended or revoked may, for a period not exceeding thirty days, operate a motor vehicle while under the instructions of, and accompanied by, a person . . . licensed . . . to operate . . . , who shall have full control of the motor vehicle as provided by law."

defendant's license and right to operate a motor vehicle in this state were under suspension. The defendant was duly informed of the more serious charge. He was found guilty of exceeding the posted speed limit and was sentenced to pay a fine of $20. No appeal has been taken from that judgment.

The sole issue on this appeal is whether "the State of Connecticut, by its action in issuing a home training certificate on June 18, 1969 to the defendant's mother in his behalf (a certificate popularly known as a learner's permit) [is] . . . estopped from simultaneously proceeding against the defendant on a charge of driving under suspension in violation of § 14-215."

Courts have traditionally held that the government may not be estopped in criminal prosecutions. " '[T]he King cannot be estopped, for it cannot be presumed the King would do wrong to any person . . . .' " 15 Halsbury, Laws of England (3d Ed.), p. 248, n. (p); see 31 C.J.S. 695, Estoppel, § 140 (c); 28 Am. Jur. 2d, Estoppel and Waiver, § 126. Nevertheless, argues the defendant, "[t]he solidly entrenched, though little discussed, judicial principle that the government cannot be estopped in criminal actions, is now subject to some doubts"; comment, "Applying Estoppel Principles in Criminal Cases," 78 Yale L.J. 1046; and where, as in this case, the state issued a home training certificate on which the defendant relied, that fact creates a valid estoppel defense against prosecution under the statute.

If we were to follow the theory advanced by the defendant, a defense of criminal estoppel would in effect permit an individual state official or state agency to suspend the statutory penal law, thereby taking it upon himself to define the limits of the criminal law. "No official or agency of government has the authority to waive the public interest, and

so none—save the legislature—can define the limits of the criminal law." Comment, 78 Yale L.J. 1046, 1051. It is beyond the power of any board or official to waive or consent to a violation of a state statute. 22 C.J.S., Criminal Law, § 42. The application of the doctrine of estoppel in a case such as this would frustrate the purpose of the statute and thwart its public policy. See note, 1 A.L.R.2d 338, 341. " 'Men must turn square corners when they deal with the Government.' " *Federal Crop Ins. Corporation* v. *Merrill,* 332 U.S. 380, 385.

*State* v. *Ragland,* 4 Conn. Cir. Ct. 424, cited in defendant's brief, is factually distinguishable from the case at bar.[4] There, a police officer ordered the defendant to drive his automobile to police head-quarters to post a bond after the defendant had requested a ride in the police cruiser. The defendant did not inform the police officer of the fact that his license and right to operate were under suspension in this state. The court held (p. 431) that "when one is affirmatively ordered by a police official acting under his authority to perform a certain act and in the performance of that act one violates a statute, a conviction should not obtain." See *Schiff* v. *People,* 111 Colo. 333, 336; *People* v. *Donovan,* 53 Misc. 2d 687 (N.Y.); cf. *State* v. *Buchanan,* 5 Conn. Cir. Ct. 379, 384.

The defendant's contention of estoppel amounts to an assertion that a state agency or state official may waive the penal laws of this state. We find nothing in the *Ragland* case, supra, or in the other cases cited by the defendant, which supports this contention.

There is no error.

In this opinion DEARINGTON and CASALE, Js., concurred.

---

[4] The opinion in *State* v. *Ragland* was cited and quoted with approval by the Maryland intermediate appellate court in *Frasher* v. *State,* 8 Md. App. 439, 452 (1970).