COMMONWEALTH *vs.* WALTER A. RIDER.

Norfolk. November 9, 1979. — December 4, 1979.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Firearms. Arrest.*

At the trial of a defendant charged with carrying a handgun under his control in a vehicle without a license to do so, evidence that the defendant was handcuffed and placed involuntarily in the police cruiser in which the gun was later found precluded a finding of guilt. [777-778]

INDICTMENT found and returned in the Superior Court on February 6, 1978.

The case was tried before *Irwin,* J.

*Hugh W. Samson* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant was convicted after a jury trial in the Superior Court of carrying a handgun under his control in a vehicle without a license or permit to do so. G. L. c. 269, § 10 (*a*), as amended through St. 1975, c. 585, § 1. His appeal is based primarily on the denial of his motion for a directed verdict. We summarize facts which the jury could have found on the evidence.

On the evening of November 23, 1977, three special State police officers accompanied by three or four Norwood police officers went to an apartment complex in

Norwood in search of the defendant. They had a warrant for his arrest on a charge unrelated to the one at issue in this case. Several of the officers entered an apartment leased by one Whiteman and a second person. They found no one there. While the police were in the apartment, the defendant and Whiteman entered and were ordered by one of the Norwood police officers to stop. They turned and ran down the stairs of the apartment building. An officer who was carrying a shotgun followed the two out of the apartment to the landing of the stairway and again ordered them to stop. He was joined on the landing by other officers; one officer blocked the exit at the bottom of the stairway. The defendant and Whiteman stopped on the stairway and turned to face the officer at the top of the stairs. Whiteman immediately raised his hands, but the defendant made a motion toward his belt before raising his hands. The officers ordered the defendant and Whiteman to stand against the wall, frisked each of them twice, and found nothing amiss. The defendant and Whiteman were handcuffed with their hands behind their backs and placed in a Norwood police cruiser.

Two other Norwood police officers, Smith and Padduck, drove the defendant and Whiteman to the police station. The defendant sat in the rear seat on the driver's side. Whiteman sat to his right. In front of Whiteman, on the passenger's side of the front seat, Smith sat facing the defendant and Whiteman. He kept a shotgun trained on them while Padduck drove the car. The dome light was on in the cruiser. During the trip the defendant and Whiteman were moving from side to side and back and forth in the seat.

When they arrived at the police station the defendant and Whiteman were again searched. The police found gloves and tape in the defendant's jacket pocket. A loaded .38 caliber revolver was found in the waistband of Whiteman's trousers. Padduck and Smith returned to the cruiser and searched it. They found a loaded .25

caliber semi-automatic pistol tucked into the crease of the rear seat cushions on the driver's side where the defendant had been sitting. Smith had searched the cruiser before he and Padduck had set out on patrol that evening, and no one but the defendant and Whiteman had ridden in the back seat since that time.

Two explanations of how the gun came to be in the police cruiser have been suggested. The more obvious inference from the evidence is that the defendant had the pistol in his possession when he was arrested and continued its possession until he managed to tuck it into the seat crease while he was sitting with his hands handcuffed behind him. A second theory is that Whiteman had in his possession both the .38 caliber revolver later found by the police in his waistband and the .25 caliber pistol found in the seat crease. This second theory would require the jury to conclude that Whiteman had somehow managed to transfer the pistol to the defendant while officer Smith looked on and that the defendant then hid the pistol in the seat crease.

There can be no doubt that the evidence presented at the trial would support the inference that the defendant had had the gun in his possession from the time he was arrested. Thus he could have been convicted under an appropriately worded indictment charging the carrying of a firearm on his person without a license under G. L. c. 269, § 10 (*a*). The Commonwealth, however, chose to indict the defendant under an alternative provision of § 10 (*a*). Compare *Commonwealth* v. *Guerro,* 357 Mass. 741, 749-750 (1970). The indictment alleges that the defendant "did unlawfully and knowingly carry under his control in a vehicle a firearm, to wit, a handgun, without having in effect any license or permit to carry firearms." The defendant's presence in a vehicle was therefore an essential element of the crime charged. The defendant asserted in his motion for a directed verdict that because he had been arrested, handcuffed and placed involuntarily in the police cruiser, he could not be convicted of car-

rying the pistol under his control in the vehicle. We agree. The specification of the indictment, as narrowly drawn, that the defendant carried the gun under his control in a vehicle cannot be satisfied in the circumstances· of this case. The defendant cannot be held responsible for his concededly coerced and obviously involuntary presence in the police cruiser. Compare *Commonwealth* v. *Elwell,* 2 Met. 190, 192 (1840); *Commonwealth* v. *Barnes,* 369 Mass. 462, 467 (1976) (force or compulsion may provide defense to criminal charge).[1]

We regard the second theory, which would have the defendant receiving the pistol from Whiteman, to be entirely speculative. On the evidence before them a rational jury (*Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 [1979]) could not have found beyond a reasonable doubt that such a transfer occurred.

*Judgment reversed.*

*Verdict set aside.*

*Judgment for the defendant.*

---

[1] Other courts have used various legal theories to bar prosecution for conduct induced by a police order. *State* v. *Ragland,* 4 Conn. Cir. Ct. 424 (1967) (analogy to entrapment). *Schiff* v. *People,* 111 Colo. 333, 336 (1943) (police order negated the required intent to steal). *People* v. *Donovan,* 53 Misc. 2d 687, 689 (N.Y. Westchester County Ct. Spec. Sess. 1967) (estoppel).