Commonwealth *vs.* Weston Bean.

Plymouth.  November 12, 1982. — January 18, 1983.

Present: Hale, C.J., Cutter, & Kass, JJ.

*Firearms.  Practice, Criminal,* Instructions to jury, Burden of proof.

At the trial of a complaint charging possession of ammunition in violation of G. L. c. 269, § 10 (*h*), evidence of the circumstances in which police discovered the defendant in the passenger seat of an automobile, with a container holding nine rounds of .22 caliber ammunition on the seat near him, was sufficient to warrant a finding that the defendant had knowledge and control of the ammunition. [169-171]

Complaint received and sworn to in the Brockton Division of the District Court Department on August 13, 1980.

On appeal to the jury session of the Fourth Plymouth Division of the District Court Department, the case was tried before *Martin*, J.

*Patricia A. O'Neill* for the defendant.

*Robert S. Sinsheimer*, Assistant District Attorney, for the Commonwealth.

Cutter, J.  Bean on August 12, 1980, about 11:00 p.m. was a passenger in an automobile, operated by John Vichino, standing in a parking lot next to the night deposit box of Plymouth Home National Bank.  Officer William Shaw of the East Bridgewater police, in a marked police cruiser, saw Vichino's automobile as it started to move and stopped it.  A second police cruiser, driven by Officer Good with Officer Fortier as passenger, soon arrived.  They each saw Bean move his arm across the bench-type front seat toward Vichino, and Officer Fortier saw Vichino make an arm movement toward Bean.  The officers could see Bean's arm down to the elbow but not his lower arm.  Officer Fortier looked into the front seat of the stopped vehicle and saw

a plastic container or vial about five to six inches from Bean. Another officer testified that the container was wedged into the crack of the bench seat. Later the container was found to contain nine rounds of .22 caliber ammunition. Bean, when asked for identification, gave a false name.

Bean was requested to step out of the automobile and, after some discussion, admitted that he had given a false name. A search of the automobile revealed a stocking cap and a stick like a baseball bat on the passenger side of the vehicle's front seat and a visored cap on the dashboard in front of the driver's seat. Officer Shaw then searched the vehicle's trunk and found there two rifles, one .35 caliber and one .22 caliber. On seeing the rifles, Officer Shaw said, "What have we here?" Bean at once replied, "[T]hose guns are not mine." There was conflicting testimony concerning whether Bean could have seen the rifles in the trunk before he spoke.

Bean testified that Vichino had given him the container of ammunition when Vichino was getting his registration from the glove compartment, and that he (Bean) pushed it away when he saw what it was. He denied having the ammunition on his person that night and claimed that he first saw the container when Vichino passed it to him as Vichino left the vehicle to give his registration to the officers. Bean did not know where the container was when he himself left the vehicle, but "knew it was on the seat somewhere."

Bean was tried in a District Court on a complaint charging possession of ammunition without complying with the requirements relating to firearm identification, G. L. c. 269, § 10(*h*). He was found guilty by a jury of six persons. The trial judge directed a finding of not guilty on a complaint charging Bean with possession of the rifles discovered in the trunk of the vehicle on the ground that the evidence did not establish that Bean had control of the trunk. He refused to enter a finding of not guilty on the charge of possession of the ammunition.

1. On the conflicting evidence, in its aspect most favorable to the Commonwealth, the jury reasonably could

infer that Bean had possessed the container of ammunition, when viewed on the basis of its presence on the bench seat near where he had been sitting together with other circumstances attendant upon its discovery, e.g., (a) the movement of Vichino's vehicle from near the bank's night deposit box upon the approach of the police cruiser; (b) the observations by the officers of Bean's efforts to push the container toward Vichino; (c) evidence which (if believed) tended to show that Bean knew of the presence of rifles in the vehicle's trunk even though he could have been found not to have been in a position from which he could see into the trunk when it was opened; (d) the fact that the ammunition near him fitted one of those rifles; (e) the circumstance that, when questioned, he gave a false name and, when that falsehood was detected, gave only the general and somewhat inarticulate explanation that he was trying to avoid "getting a hassle"; (f) that the events took place in a vehicle (containing two passengers who may have been acting to some extent in concert) late at night in the parking lot of a bank not open for business; and (g) the presence of a stick like a baseball bat near Bean's seat. Possession (of the ammunition) is the gravamen of the charge. *Commonwealth* v. *Morse*, 12 Mass. App. Ct. 426, 427-428 (1981). The evidence tending to show that Bean had actual possession is supported by the circumstances permitting an inference of constructive possession because of his knowledge of the location of the contraband bullets and of one rifle which they fitted. The case seems to us to be governed by *Commonwealth* v. *Albano*, 373 Mass. 132, 134-135, 136 (1977). See *Commonwealth* v. *Seay*, 376 Mass. 735, 737-738 (1978). See also *Commonwealth* v. *Harvard*, 356 Mass. 452, 458 (1969). Compare *Commonwealth* v. *Rider*, 8 Mass. App. Ct. 775, 777-778 (1979); *Commonwealth* v. *Hill, ante* 93 (1983). Compare also *Commonwealth* v. *Boone*, 356 Mass. 85, 87 (1969); *Commonwealth* v. *Bennefield*, 373 Mass. 452, 453 (1977). As in the *Albano* case, at 134, the circumstances provided sufficient basis for inferring that Bean had knowledge of and intent to control the ammunition to

tip the scale in favor of sufficiency of the evidence as a basis of possession by Bean alone or together with Vichino. *Commonwealth* v. *Dinnall,* 366 Mass. 165, 168-169 (1974, "Possession need not be exclusive but may be joint, and . . . may be proved by circumstantial evidence"). Cf. *Commonwealth* v. *Deagle,* 10 Mass. App. 563, 567-568 (1980).

2. No objections were made to the trial judge's charge. Thus we need consider the points concerning the charge only to ascertain whether, considering the charge as a whole, there was any basis for fearing a miscarriage of justice. *Commonwealth* v. *Gallison,* 384 Mass. 184, 192 (1981). See *Commonwealth* v. *Ramey,* 368 Mass. 109, 113-115 (1975). Bean contends that the trial judge improperly told the jury (in charging on credibility) that their "sole, total function" and responsibility was "finding the facts . . . [a]nd when you find the facts here, all you have to find is who is telling the truth." We do not find persuasive Bean's contention that this instruction tended to shift the burden of proof to him. In any event, the judge almost immediately instructed that the Commonwealth "has the responsibility of establishing beyond a reasonable doubt the guilt of the defendant" and that "[t]here is no duty on . . . the defendant to prove or . . . otherwise [to] establish his innocence." The judge also instructed on reasonable doubt in much the terms employed in *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). See *Commonwealth* v. *Williams,* 378 Mass. 217, 235 (1979); *Commonwealth* v. *Tavares,* 385 Mass. 140, 147-148 (1982). There could be "no reasonable likelihood that the charge . . . as a whole could have led the jury to ignore the reasonable doubt test." *Commonwealth* v. *Leaster,* 362 Mass. 407, 416-417 (1972). Compare *Commonwealth* v. *Berth,* 385 Mass. 784, 785-788 (1982), relating largely to alibi testimony not here involved.

*Judgment affirmed.*