## STATE OF CONNECTICUT *v.* CHRIS W. RAGLAND

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. MV 1-42280

Argued January 9—decided April 21, 1967

*Kevin Tierney,* of Greenwich, for the appellant (defendant).

*Leo Kivell,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. At the time of his arraignment, the defendant entered a plea of guilty to a first count charging improper parking and a plea of not guilty to a second count of operating while his license and right to operate were under suspension. General Statutes § 14-215. He was tried by the court and found guilty, whereupon he was arraigned on a part two of the information charging him with being a second offender of the charges alleged in the second count, to which charge he entered a plea of guilty and was so found. He has appealed and has assigned error in that he was not formally arrested for operating while under suspension and therefore was not properly before the court; in the denial of his motion to correct the finding; and in that he was immune from prosecution, for his operation was under the direction of a uniformed officer.

We first consider the question of jurisdiction. The defendant claims that he was arrested solely for improper parking and not for operating while under suspension. It is true that when he was apprehended he was charged with improper parking. Before he was arraigned, however, it was ascertained that his right to operate a motor vehicle, at the time of his apprehension, was then under suspension. When he appeared in court, that allegation was added as a second count. The records indicate that the original arrest was in August of 1965. His

first court appearance was on January 18, 1966, when he entered a plea of guilty to improper parking and a plea of not guilty to operating while under suspension and elected trial by jury. On February 9, he withdrew his election for trial by jury and then elected a trial to the court. During the trial, he raised the question of jurisdiction. The state claimed that the defendant was taken into custody on a rearrest warrant which contained the second count.

The defendant contends that since he was originally arrested for improper parking and no formal arrest was made for operation under suspension, the court lacked jurisdiction of the person as to the latter charge and he was therefore not lawfully before the court on that charge. That the court had jurisdiction of the subject matter is conceded. The defendant's claim should have been raised prior to the entry of his plea of not guilty. "Under modern criminal procedure, the failure to raise a claim of lack of jurisdiction of the person until after the entry of a plea of guilty or not guilty is strong evidence of a consent to the jurisdiction of the person or, to use the language of *Church* v. *Pearne,* 75 Conn. 350, 355 . . . , of a 'voluntary submission' to the jurisdiction of the court over the person." *State* v. *Licari,* 153 Conn. 127, 130. "The burden of claiming and proving, however, that consent rendered lawful an otherwise illegal seizure of person or property is on the state." Ibid. The defendant's grounds for a preliminary motion attacking jurisdiction were known or could reasonably have been ascertained by him at the time of arraignment, certainly at the time of trial. *State* v. *Gionfriddo,* 154 Conn. 90, 92. He raises no question that these allegations were unknown to him or that he was taken by surprise. He remained silent until after the commencement of the trial. *State* v.

*Licari,* supra; 21 Am. Jur. 2d, Criminal Law, § 379. Under these circumstances we cannot, as a matter of law, find an involuntary submission to the in personam jurisdiction of the trial court. Moreover, no motion to dismiss for lack of jurisdiction was made by him, and the question was actually raised during the trial in respect to the admissibility of certain evidence. A formal arrest of the person is not necessary where a defendant submits himself voluntarily to the jurisdiction of the court, enters a plea and goes to trial. 21 Am. Jur. 2d, loc. cit. Jurisdiction of the subject matter, however, cannot be waived and may be controverted at any stage of the proceedings. *McDonald* v. *Hugo,* 93 Conn. 360, 364.

The corrections sought in the finding are claimed on the ground that certain facts were found without evidence and should have been stricken, while other facts, admitted or undisputed, should have been added. "A fact not contradicted does not necessarily become an undisputed fact which is required to be added to the finding. . . . The trier is the final judge of the credibility of a witness and may disbelieve all or any part of his testimony." *Chazen* v. *New Britain,* 148 Conn. 349, 352. The finding as made is amply supported by the evidence, and no material corrections are warranted. Furthermore, the corrections sought are not essential to the defendant's remaining assignments of error.

The following facts were found by the court: On August 28, 1965, Officer Moye of the Greenwich police department observed an automobile improperly parked on a public street and with the aid of another officer pushed the vehicle into a private parking lot. The defendant appeared from a nearby diner and produced a North Carolina driving license. The vehicle was owned by a rental agency. A uniform traffic summons was issued, and since

the defendant had a North Carolina license he was requested to drive to police headquarters. The officer informed the defendant that he had nothing to worry about as the violation was not a moving violation. The defendant asked the officer if he could ride to headquarters in the police cruiser but was told to drive his own car. The defendant did not inform the officer that his right to operate in Connecticut was under suspension. His right to operate was under suspension, but the officer was unaware of the fact. The defendant drove his car to headquarters, posted a bond and drove off.

One of the conclusions was that the driving of the car by the defendant from the place of arrest to police headquarters constituted the operation of a motor vehicle by the defendant while his right to operate was under suspension. Upon a finding of guilty by the court, the defendant was arraigned on a part two of the information charging him with being a second offender, to which charge he entered a plea of guilty and was found guilty.

The defendant further assigns error in the court's conclusion that his operation after his arrest and at the direction of a police officer constituted a violation of § 14-215 of the General Statutes. He argues that this conclusion was an error in law because his operation was at the direction of a police officer and therefore involuntary. He contends that had he refused to obey the order he would have subjected himself to a further arrest for failure to obey an officer. General Statutes § 14-223.[1] The

[1] "Sec. 14-223. DISOBEYING ORDERS OF OFFICER. Whenever the operator of any motor vehicle fails promptly to bring his motor vehicle to a full stop upon the signal of any officer in uniform or prominently displaying the badge of his office, or disobeys the direction of such officer with relation to the operation of his motor vehicle, he shall be fined not less than five nor more than twenty-five dollars for a first offense, and not less than ten nor more than fifty dollars for any subsequent offense."

defendant was operating a rented car bearing a New York registration, and after his arrest he produced a North Carolina operator's license. The officer had no knowledge, nor could he reasonably contemplate, that the defendant's right to operate in this state was then under suspension. Because of a foreign license, the defendant was told he would be required to post a bond at police headquarters. He then asked the officer if he could drive to police headquarters with him. His request was refused, and the officer testified, "I directed him to get into his car and follow me down to headquarters."

Upon his arrest, the defendant had the right to remain silent. *State* v. *Ferrone,* 97 Conn. 258, 266; *State* v. *Tryon,* 145 Conn. 304, 308. The right to remain mute encompassed any compulsion to reveal his motor vehicle history, even if the concealment was intentional.

In driving to headquarters, the defendant was following the order of an officer, and in so doing it would seem that his operation was other than voluntary, for he was then under arrest and subservient to the orders of an officer. No cases have been cited, and we have been unable to discover any reported cases on this subject. The facts do not bring the matter squarely within the doctrine of entrapment. *State* v. *Marquardt,* 139 Conn. 1, 5. We cite, however, two cases involving entrapment which cast some light on the subject. In *Raley* v. *Ohio,* 360 U.S. 423, the defendant appeared as a witness before a commission investigating un-American activities and was told by the commission that he had the right to rely on the privilege against self-incrimination afforded him by the Ohio constitution. The commission acted in good faith, with no intent that prosecution would follow. Relying on the advice, he refused to answer

questions. He was later tried and convicted for his refusal. The Ohio Supreme Court sustained the conviction, holding that the privilege was not available to him because a state immunity statute deprived him of the protection of the privilege. On appeal, the United States Supreme Court held that the Ohio Supreme Court had dismissed the statements of the commission as legally erroneous but the fact remained that at the inquiry it was the voice of the state most presently speaking to the defendant, and due process will not permit a conviction to be obtained under such circumstances. In *Cox* v. *Louisiana,* 379 U.S. 559, the defendant had been told by a police official that he could lead a picketing demonstration in a certain location near a courthouse. He followed instructions and was arrested and convicted of breach of the peace. On appeal to the United States Supreme Court, Mr. Justice Goldberg said (p. 571), in the majority, opinion reversing conviction: "The situation presented here is analogous to that in *Raley,* which we deem to be controlling. As in *Raley,* under all the circumstances of this case, after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.' . . . The Due Process Clause does not permit convictions to be obtained under such circumstances." In 73 Harvard Law Review 1333, in a note entitled "Entrapment," the author said (p. 1335) : "When society, through its law-enforcement officials, has been the cause of an individual's action, it seems unjust for society to punish him." While it is recognized that these cases involve situations somewhat different from that presented in the instant case, it would appear

that when one is affirmatively ordered by a police official acting under his authority to perform a certain act and in the performance of that act one violates a statute, a conviction should not obtain. There was no deviation from the order, and there was no evidence that the violation existed prior to the order.

The court further concluded, however, that the defendant, upon leaving the police headquarters, drove off in his car. The immunity which had previously existed had at that time come to an end, and the defendant's operation was then voluntary, under no order of a law-enforcement agency, and a violation of the statute.

The defendant also assigns error in that the records do not indicate the actual ownership of the motor vehicle. Registration was not an issue, nor was ownership a required element of the violation. Section 14-215 forbids the operation of "any motor vehicle" during the period of suspension.[2]

Finally, the defendant assigns error in the conduct of the trial. He claims that after the state had rested he moved for dismissal, for the reasons we have considered. At this point, the prosecutor stated that he had committed an error in resting since there was one other element he wished to put in evidence. The defendant objected to the reception of additional evidence and, upon being overruled, took an exception. The additional evidence then received related to the suspension of the defendant's right to operate a motor vehicle. We cannot find that *State* v. *Gionfriddo*, 154 Conn. 90, 97, supports the defendant's contention that he did

---

[2] "Sec. 14-215. OPERATION WHILE REGISTRATION OR LICENSE IS REFUSED, SUSPENDED OR REVOKED. No person . . . whose operator's license or right to operate . . . has been suspended or revoked, shall operate any motor vehicle during the period of such . . . suspension or revocation. . . ."

not receive a fair trial. "In any ordinary situation if a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." *Hauser* v. *Fairfield,* 126 Conn. 240, 242. In *State* v. *Donnelly,* 124 Conn. 661, 663, although the ground of objection, double jeopardy, was other than that presented here, the court not only allowed the state to amend its information after it had rested but also allowed the state to offer further evidence, and no error was found to have been committed. See 53 Am. Jur., Trial, § 123. No abuse of discretion has been shown here.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.