STATE of North Dakota, Plaintiff
and Appellant,

v.

Donald W. BETTENHAUSEN,
Defendant and Appellee.

Cr. No. 890375.

Supreme Court of North Dakota.

Aug. 9, 1990.

Terry W. Elhard (argued), State's Atty., Ashley, for plaintiff and appellant.

Gross Law Firm, Sidney A. Gross (argued), Ashley, for defendant and appellee.

MESCHKE, Justice.

The State appealed a county court order that dismissed a criminal charge that Donald W. Bettenhausen drove while his license was suspended, and that ordered reinstatement of Bettenhausen's license. We reverse and remand.

In October 1986 Bettenhausen was convicted of driving while under the influence of intoxicating liquor in violation of NDCC 39-08-01. Pursuant to NDCC 39-06.1-10, 24 points were assessed against Bettenhausen's driving record and his operator's license was suspended for 91 days. NDCC 39-08-01(4) requires that, for a first, second, or third offense, the sentence for conviction of driving under the influence of

intoxicating liquor must include "an order for addiction evaluation by an appropriate licensed addiction treatment program." Bettenhausen took the addiction evaluation required as part of his sentence, but failed to take the inpatient treatment recommended by his addiction counselor. After the 91 day suspension, Bettenhausen did not obtain reinstatement of his operator's license.

On July 21, 1989, Bettenhausen drove a truck and was charged with driving while his license was suspended, in violation of NDCC 39–06–42. The trial court did not rule before trial on Bettenhausen's pretrial motion to dismiss, deciding instead to "take the matter under advisement and apply what it learns during this hearing today in regard to ultimate dismissal or a conviction of this matter." At the trial without a jury, Bettenhausen and the State stipulated to certain facts and only one witness testified at the trial. The trial court dismissed the charge against Bettenhausen and ordered the Drivers License Division (the Division) to reinstate his license upon proof of financial responsibility and payment of the reinstatement fee. The State appealed.

■■■ The State is not authorized to appeal from an acquittal. *State v. Flohr*, 259 N.W.2d 293 (N.D.1977). However, the State may appeal from a dismissal that has the same effect as an order quashing an information. NDCC 29–28–07; *State v. Hogie*, 424 N.W.2d 630 (N.D.1988). When a dismissal is based upon legal conclusions, rather than the resolution of some or all of the factual elements of the offense charged, a majority of this court has held that the dismissal is equivalent to an order quashing an information and is, therefore, appealable by the State. *City of Wahpeton v. Desjarlais*, 458 N.W.2d 330 (N.D. 1990). The order dismissing the charge against Bettenhausen is appealable.

The State appeals the trial court's rulings (1) that Bettenhausen could challenge the validity of his continued suspension beyond 91 days for failure to take the recommended inpatient treatment; (2) that Bettenhausen's license was not validly under suspension on July 21, 1989; (3) that NDCC 39–06.1–10(3.1)(a) is unconstitutional because of vagueness or because of the unlawful assignment of a judicial function to a counselor or instructor; and (4) that the mandatory four-day imprisonment provision of NDCC 39–06–42 was inapplicable.

## CONTINUING SUSPENSION

■■■ Bettenhausen challenged the validity of continued suspension for failure to take inpatient treatment recommended by an addiction counselor. In *State v. Larson*, 419 N.W.2d 897, 898 (N.D.1988) we said:

> In *State v. Mehlhoff*, 318 N.W.2d 314 (N.D.1982), we held that the validity of a driver's license suspension may not be collaterally attacked at a trial for driving under suspension (DUS). We concluded that the proper time to challenge the validity of a driver's license suspension is at a hearing on the suspension.

Because Bettenhausen did not request a hearing on the administrative suspension of his license, we conclude that he may not challenge that suspension in his trial for driving under suspension.

■■■ The State asserts that the trial court incorrectly ruled that the Division did not reduce Bettenhausen's accumulated points as required by law and that Bettenhausen's license was not validly under suspension in July 1989. We agree.

The relevant part of NDCC 39–06.1–10(2) says:

> If the licensing authority confirms, after hearing or opportunity for hearing, that the licensee's driving record has an accumulated point total of twelve or more points, the licensing authority shall suspend his operator's license according to the following schedule:

| Accumulated Point Total: | Period of Suspension: |
|---|---|
| a. Twelve | 7 days |
| b. Thirteen and above | 7 days for each point over eleven |

The relevant part of NDCC 39–06.1–12 says:

> When a licensee completes a period of suspension ordered pursuant to section 39–06.1–10 or as ordered or recom-

mended by a court of competent jurisdiction, the licensing authority shall reduce the point total shown on his driving record to eleven points.

And, NDCC 39–06.1–13(1) says:

The licensing authority shall reduce the point total shown on any licensee's driving record by one point for each three-month period during which no points are recorded against his driving record for a moving violation or a violation listed in paragraphs 13 through 18 of subdivision a of subsection 3 of section 39–06.1–10. The three-month period must be calculated from the date of entry of the last points against that licensee's driving record.

These sections outline relevant elements of the point system that the Division must apply in suspending an operator's license.

Bettenhausen's driving record showed that 14 points were still assessed against it on July 21, 1989, and that his license was still suspended. Bettenhausen argued that his suspension "would have been completed on or about January 19, 1987," that his driving record should then have shown 11 points, and that his "driving record as of July 21, 1989, should have shown, at the most, one point against it." A Division employee testified:

We do not reduce the points for serving the suspension day period until after the driving privileges have been reinstated. When his driving privileges are reinstated, he would be given thirteen points credit because he has served that 91 days and since at this point he only has twelve points, he would be down to zero points.

The trial court ruled that the Division's failure to "reduce the number of points against Bettenhausen's license to eleven after his license had been suspended for 91 days" was "contrary to law."

Once suspended, an operator's license remains suspended until reinstated. *See State v. Brude*, 222 N.W.2d 296, 297–298 (N.D.1974):

The phrase "period of revocation," as used in Chapter 39–06 of the North Dakota Century Code, means a period during which driving privileges are revoked and no application for a reinstatement may be made. Revocation will, however, continue after this period if the license is not reinstated by the licensing authority. If the individual driver wishes the revocation terminated he must make application and satisfy the licensing authority as to his qualification to drive a motor vehicle on our highways. See Section 39–06–36, N.D.C.C.

*See also, State v. Mische*, 448 N.W.2d 412, 414 (N.D.1989) ["When the period of suspension expires, an operator's license may not be returned or an operator's driving privileges may not be reinstated until the operator pays a $25 reinstatement fee."]; *State v. Moore*, 341 N.W.2d 373, 375 (N.D. 1983) ["revocation continues until the driver is able to apply for a new license."]. A person whose license has been suspended is not privileged to drive until he meets reinstatement requirements and regains his operator's license.

Sections 39–06–35, 39–06.1–10(3.1)(a), and 39–16.1–07(2) of the North Dakota Century Code spell out requirements for reinstatement of a suspended operator's license.

When the period of suspension imposed under this title ceases, the operator's license or driving privilege that has been suspended may not be returned or reinstated, and remains under suspension, until the operator pays to the commissioner a reinstatement fee ... and, if applicable, until the provisions of subsection 3.1 of section 39–06.1–10 have been complied with.

NDCC 39–06–35. NDCC 39–06.1–10(3.1)(a) imposes an additional requirement for reinstatement when the suspension is for driving under the influence of intoxicating liquor:

If the commissioner is informed by a court that a person has been convicted of violating section 39–08–01 or equivalent ordinance, the commissioner, subject to the offender's opportunity for hearing under subsection 1, may not restore the operator's license to the offender until the offender furnishes to the commissioner the written statement of the counselor or instructor of an appropriate li-

censed addiction treatment program that the offender does not require either an education or treatment program or that the offender has physically attended the prescribed program and has complied with the attendance rules.

NDCC 39–16.1–07(2) requires that a person convicted of DUI may not have his operator's license restored until he has filed proof of financial responsibility. Thus, once suspended, an operator's license remains under suspension after the declared period of suspension and until the license is reinstated.

Reinstatement of Bettenhausen's license requires (1) that he pay the reinstatement fee; (2) that, as NDCC 39–06.1–10(3.1)(a) requires, Bettenhausen furnish a written statement from a counselor or instructor of an appropriate licensed addiction treatment program that he either (i) does not need an education or treatment program or (ii) has physically attended the prescribed program and has complied with the attendance rules; and (3) that Bettenhausen prove financial responsibility. It is undisputed that Bettenhausen has not paid the reinstatement fee, has not furnished an addiction treatment statement, and has not submitted proof of financial responsibility. Accordingly, the Division did not err in failing to "reduce the number of points against Bettenhausen's license to eleven after his license had been suspended for 91 days." His operator's license, therefore, remains under suspension.

## CONSTITUTIONALITY

■ The State contends that the trial court erred in determining that NDCC 39–06.1–10(3.1)(a) is unconstitutional because of vagueness and because it unlawfully delegates a judicial function to an addiction counselor or instructor.

The Division employee testified:

Q. Now, what happens if he goes to another addiction evaluation and that one shows that—or indicates that all he needs is a DUI counterattack, then what?

A. If it's through an approved facility, we will go with the least of all forms

of treatment, and that very often does happen in cases like Mr. Bettenhausen's. It's been three years since his offense. He could, if he had a problem three years ago, he may have taken care of that on his own in the meantime. Going to another evaluation may find that no treatment at all is recommended.

Q. Now, if the driver would be ordered to undergo an addiction evaluation as the result of a DUI and he takes, could he then take up to like five evaluations and take the least restrictive recommendation?

A. Definitely.

Q. And you would recognize that?

A. Yes we would.

\*    \*    \*    \*    \*    \*

THE COURT: So you don't give them a notice that states that if he disagrees with the treatment that's being recommended, he has the right to a hearing and to bring in a supplemental recommendation.

MS. BARNHARDT: No we don't.

The trial court ruled that, "If the practice or policy of Drivers License Division, as it pertains to the application of subsection 3.1(a) of Section 39–06.1–10 NDCC, is lawful, then said subsection 3.1(a) is unconstitutional because of vagueness and because of the unlawful assignment of a judicial function to a counsellor or instructor."

Bettenhausen contends that the procedures employed by the Division are unconstitutional for several reasons:

a) The lack of notice and opportunity for a hearing on the indefinite portion of the suspension.

b) The [Division's] institution of their own internal policy without notification to the general public.

c) The [Division's] total reliance on the report of an addiction counselor and apparent disregard to any Court action relating thereto.

d) The mandatory four day jail sentence being imposed solely on the evaluation's [sic] continued suspension without a right of hearing.

We disagree. In our view, NDCC 39–06.1–10(3.1)(a) is clear and unambiguous and is not unconstitutionally vague. The additional contention that the Division's application of the statute makes it unconstitutionally vague is without merit.

Bettenhausen argues that he should have had notice and an opportunity for a hearing to question the addiction evaluation. However, the Division provided Bettenhausen with written notice (1) that he had ten days within which to request a hearing; (2) that payment of a reinstatement fee was required before reinstatement of his driving privileges; (3) that reinstatement required proof of financial responsibility; and (4) that:

YOUR DRIVING PRIVILEGES CANNOT BE REINSTATED AT THE END OF YOUR SUSPENSION PERIOD UNTIL YOU HAVE PROVIDED THE DRIVERS LICENSE AND TRAFFIC SAFETY DIVISION WITH A WRITTEN STATEMENT FROM AN APPROPRIATE LICENSED TREATMENT CENTER THAT YOU DO NOT REQUIRE A TREATMENT/EDUCATION PROGRAM OR THAT YOU HAVE COMPLETED THE TREATMENT/EDUCATION PROGRAM PRESCRIBED AS A RESULT OF YOUR EVALUATION.

Therefore, Bettenhausen was notified about his right to a hearing and about the requirements for reinstatement of his driving privileges.

The notice specifically identified Bettenhausen's duty to provide a written statement that he either did not require a treatment or education program, or had completed one. If Bettenhausen wished to challenge the effect of his subsequent evaluation, he should have requested a hearing. "[T]he proper time to challenge the validity of a driver's license suspension is at a hearing on the suspension." *State v. Larson*, 419 N.W.2d at 898. Bettenhausen may not now complain about a lack of an opportunity to question the effect of the evaluation at a hearing when he did not request the hearing offered him.

Bettenhausen complains that the Division has adopted a policy "of accepting the least restrictive treatment recommended" without notifying the public. Under the Division's policy, a driver who is not satisfied with his initial evaluation and recommendation may secure additional evaluations and recommendations from other counselors or instructors, and the Division will accept the least restrictive treatment recommended. The statute, NDCC 39–06.1–10(3.1)(a), and, perhaps more importantly, the notice by the Division to Bettenhausen, gave notice that an offender's license may only be restored if he provides a written statement from an appropriate licensed addiction treatment program. Neither the statute nor the actual notice to Bettenhausen contains language suggesting that an offender is limited to only one evaluation and recommendation. In any event, Bettenhausen "should have inquired about his right to challenge the status of his license before he boldly defied Section 39–06–42, which prohibits a person from driving while his license is under [suspension]." *State v. Moore*, 341 N.W.2d at 375. The Division's administration of the statute does not make it unconstitutional.

Bettenhausen, who asserts that "the evaluation ... appears questionable," complains that the Division "relies totally on an independent evaluation of an addiction counselor" and "blindly take[s] the recommendation of this counselor." Bettenhausen, however, did not request an administrative hearing to challenge the validity of his evaluation, nor did he seek another evaluation. Bettenhausen is, therefore, in no position to challenge either the Division's reliance on the existing evaluation by Bettenhausen's addiction counselor or the Division's reliance on Bettenhausen's failure to file another evaluation by an addiction counselor that would satisfy the statutory requirement.

Citing *State v. Chapin*, 429 N.W.2d 16 (N.D.App.1988), Bettenhausen contends that reliance on an addiction counselor's recommendation for treatment is an unconstitutional delegation of judicial authority. *Chapin* followed our decision in *State v. Nelson*, 417 N.W.2d 814 (N.D.1987), in which the trial court required the defen-

dant to undergo an addiction evaluation and follow any treatment prescribed by the addiction evaluator as part of the sentence for DUI. We held: "In doing this the trial court delegated its authority to sentence Nelson to the addiction evaluator. This is improper." 417 N.W.2d at 817. We went on to observe that "[w]hile a court may utilize an addiction evaluation to advise it in making a sentencing determination, the final determination must be made by the court itself." *Id.*, at 818. But, *Chapin* and *Nelson* are inapposite.

In *Chapin* and *Nelson*, trial courts delegated their judicial sentencing authority to addiction counselors by allowing the counselors to determine some of the conditions of criminal sentences. This is not a sentence for conviction of a crime; this is an administrative suspension of an operator's license. An administrative proceeding for suspension of a license is separate and distinct from a criminal proceeding. *Wolf v. North Dakota Highway Comm'r*, 458 N.W.2d 327 (N.D.1990); *Williams v. North Dakota State Highway Comm'r*, 417 N.W.2d 359 (N.D.1987). A license suspension is not a criminal matter, but is an exercise of the police power to protect the public. *Holen v. Hjelle*, 396 N.W.2d 290 (N.D.1986). A criminal analogue does not condemn as unconstitutional conditions legislatively imposed on an administrative license suspension.

The privilege of using a motor vehicle "cannot be granted promiscuously and cannot be granted without limitations as to continuation of the privilege." *State v. Brude*, 222 N.W.2d at 298. Use of public highways is "a privilege which a person enjoys subject to the control of the State in its valid exercise of its police power." *State v. Kouba*, 319 N.W.2d 161, 163 (N.D. 1982). The privilege of operating a motor vehicle on public highways is subject to such reasonable regulation and control as public authority may "see fit to impose under the police power in the interest of public safety and welfare." *State v. Newton*, 274 S.C. 287, 262 S.E.2d 906, 910 (1980); *Anderson v. Commissioner of Highways*, 267 Minn. 308, 126 N.W.2d 778, 784 (1964). We conclude that NDCC 39–06.1–10(3.1)(a) is neither unconstitutionally vague nor an unconstitutional delegation of judicial authority.

The trial court ruled that Bettenhausen's license was not under suspension in July 1989 and that NDCC 39–06–42 was inapplicable. The pertinent part of NDCC 39–06–42 mandates four days of imprisonment for the crime of driving under suspension if the suspension was imposed for driving while under the influence of intoxicating liquor:

1. ... any person who drives a motor vehicle on a highway ... while that person's license or privilege so to do is suspended or revoked is guilty of a class B misdemeanor.

2. If the suspension or revocation was imposed for violation of section 39–08–01 or equivalent ordinance ... the sentence must be at least four consecutive days' imprisonment....

Bettenhausen's license suspension in 1986 was originally "imposed for violation of section 39–08–01 or equivalent ordinance," that is, driving while under the influence. NDCC 39–06–42. Bettenhausen's license was still under that suspension in July 1989 because he had not complied with requirements for reinstatement of his driving privileges. Therefore, NDCC 39–06–42 applies.

The order is reversed and this matter is remanded for further proceedings in accordance with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and GIERKE, JJ., concur.