[No. 17603-3-II. Division Two. August 29, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. GARRETT LEE DANNER, ET AL., *Respondents*.

*Steward Menefee, Prosecuting Attorney*, and *Loren Oakley, Deputy*, for petitioner.

*Stephen J. Hyde*, for respondents.

HOUGHTON, A.C.J. — We granted the State's petition for discretionary review of a superior court's order affirming a district court order. The district court dismissed charges of driving while license suspended or revoked against Garrett Lee Danner and Mark Campbell. We reverse and remand.

## FACTS

Garrett Lee Danner's driver's license was revoked effective March 14, 1987, for five years, pursuant to RCW 46.65, because of his being an habitual traffic offender (HTO). On September 13, 1992, the State charged Danner with first degree driving while license is suspended or revoked under RCW 46.20.342(1)(a). At a bench trial heard on stipulated facts, the court found that the HTO revocation was no longer in effect at the time of the citation because more than five years had elapsed. The district court concluded that the State failed to prove an element of the crime charged and dismissed the charge.

On October 26, 1992, Mark Campbell was stopped for a

speeding violation. Campbell's license had been suspended for five years effective July 31, 1987, because he was an HTO. His license had not been reinstated at the time of the citation for speeding. The State charged Campbell with driving while license is suspended or revoked in the first degree. Campbell moved to dismiss the charges. The district court granted the motion and dismissed the case because the State failed to prove that the order of revocation was still in effect.

The State appealed to the superior court, where both decisions were affirmed. We granted discretionary review and consolidated the cases.

### ANALYSIS

The State contends that the district and superior courts erred because the orders revoking Danner and Campbell's licenses, pursuant to RCW 46.20.342, remained in effect until the Department of Licensing (DOL) restored the privilege to drive. RCW 46.20.342 provides for various classes of driving while a license is suspended or revoked. RCW 46.20.342 (1)(a) (under which Campbell's and Danner's licenses were revoked) applies to HTO's and states:

> It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state. Any person who has a valid Washington driver's license is not guilty of a violation of this section.
>
> (a) A person found to be an habitual offender under chapter 46.65 RCW, who violates this section while an order of revocation issued under chapter 46.65 RCW prohibiting such operation *is in effect,* is guilty of driving while license suspended or revoked in the first degree, a gross misdemeanor.

(Emphasis added.)

According to RCW 46.65.070, an HTO with a revoked license must wait five years before becoming eligible to have a license reinstated, specifically:

No license to operate motor vehicles in Washington shall be issued to an habitual offender (1) for a period of five years from the date of the license revocation . . . and (2) *until the privilege* of such person to operate a motor vehicle in this state *has been restored* by the department of licensing as provided in this chapter.

(Emphasis added.) At the end of five years, the offender may petition for restoration pursuant to RCW 46.65.100, which states:

At the expiration of five years from the date of any final order finding a person to be an habitual offender and directing him [or her] not to operate a motor vehicle in this state, such person *may petition* the department of licensing for restoration of his [or her] privilege to operate a motor vehicle in this state. *Upon receipt of such petition, and for good cause shown*, the department of licensing shall restore to such person the privilege to operate a motor vehicle in this state upon such terms and conditions as the department of licensing may prescribe, subject to the provisions of chapter 46.29 RCW and such other provisions of law relating to the issuance or revocation of operators' licenses.

(Emphasis added.)

The State contends that these three statutes concern the same subject matter and must be reconciled to give meaning to them all. *See State v. Elgin*, 118 Wn. 2d 551, 557, 825 P.2d 314 (1992). The State notes that the three statutes concern an HTO who has a revoked or suspended license. RCW 46.20.342 describes the penalties, while RCW 46.65.070 and RCW 46.65.100 are concerned with the procedures for reinstatement. There is not, however, language harmonizing the three statutes for situations such as here, where the time for the revocation has expired; that is, where the period of suspension has run, but the driver has not taken the steps necessary to have his or her driver's license reinstated. The State further contends that the five-year period in the statute defines the time when an offender may petition the Department of Licensing (DOL) for reinstatement of driving privileges and that the revoked or suspended status of the license continues until the license is reinstated.

Danner and Campbell contend that the plain language of RCW 46.65.060[1] controls and that there is no need to reconcile the applicable statutes. Danner and Campbell assert that the period of revocation as specified in RCW 46.65.060 had expired and so the revocation order was no longer in effect. Their argument is incorrect. RCW 46.65.060 does not apply to a matter at this stage, but rather applies to the initial determination of the offender's status as an HTO.[2] RCW 46.65.070 and RCW 46.65.100, on the other hand, apply postdetermination and are directed to both the driver and the DOL. Although RCW 46.65.070 and 46.65.100 do not directly conflict with RCW 45.20.342(1)(a), the statutes do overlap, thus it is necessary to reconcile them and give a meaningful interpretation to all three statutes.

 When construing a statute, we must determine and give effect to the Legislature's intent. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992). We apply principles of statutory construction to ascertain the Legislature's purpose in enacting it. *Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992). In case of conflicting statutes, they must be read together "to give each effect and to harmonize each with the other." *Bour v. Johnson*, 122 Wn.2d 829, 835, 864 P.2d 380 (1993) (quoting *Draper Mach. Works, Inc. v. Department of Natural Resources*, 117 Wn.2d 306, 313, 815 P.2d 770 (1991)). We must interpret the statute in a way that best advances the Legislature's intent and avoid a strained and unrealistic interpretation. *Wichert v. Cardwell*, 117 Wn.2d 148, 151,

---

[1]RCW 46.65.060 provides in relevant part:

"If the department finds that such person is not an habitual offender under this chapter, the proceeding shall be dismissed, but if the department finds that such person is an habitual offender, the department shall revoke the operator's license for a period of five years . . . ."

[2]Danner and Campbell contend that their cases were dismissed pursuant to RCW 46.65.060, because technically they were not found to be habitual traffic offenders. This contention is wrong. The court found that they were no longer habitual traffic offenders because the period had run, not that they were never habitual offenders.

812 P.2d 858 (1991); *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 802, 808 P.2d 746 (1991).

The status of an HTO's driver's license, once the period of revocation has run but before the driver has petitioned for reinstatement, has not been addressed by Washington Courts. Under a statute different from those here, our Supreme Court has held that a suspension does not automatically terminate at the end of the statutory period. *Artis v. Rowland*, 64 Wn.2d 576, 392 P.2d 815 (1964) (revocation for driving while intoxicated). The *Artis* court held that once an operator's license is suspended or revoked, it cannot be reinstated absent compliance with the mandatory requirements. *Artis*, 64 Wn.2d at 579-80. Absent such compliance, the period of suspension continues. *Id.; see also State ex rel. City of Richland v. Haag*, 20 Wn. App. 868, 871, 582 P.2d 910 (1978) (Munson, C.J., dissenting) (must comply with all requirements before reinstatement of license after suspension). Other jurisdictions are split regarding the status of a revoked or suspended license upon expiration of the applicable time period. *See*, Joseph B. Conder, Annotation, *Validity, Construction, Application, and Effect of Statute Requiring Conditions, in Addition to Expiration of Time, For Reinstatement of Suspended or Revoked Driver's License*, 2 A.L.R.5th 725 (1992).

For example, in the District of Columbia, a license is not automatically reinstated after the period of suspension or revocation expires. *See Eilers v. District of Columbia Bureau of Motor Vehicles Servs.*, 583 A.2d 677 (D.C. 1990).[3] The *Eilers* court held that where the revocation of the driver's privilege was proper, the license would not be

---

[3]The District of Columbia's code governing reinstatement is similar to Washington's:

"[t]he Director shall not . . . restore the operating privilege of any nonresident whose license has been revoked unless and until he or she is satisfied, after investigation of the driving ability of that person, that it will be safe to grant the privilege of driving a motor vehicle.

*Eilers*, 583 A.2d at 688 (quoting 18 DCMR § 306.7 (1987)).

restored automatically at the expiration of the period of revocation, but that the driver would have to reapply for reinstatement. *Eilers*, 583 A.2d at 688. Moreover, the driver must comply with statutory requirements after the period of revocation has run, but before restoration of the privilege. *See State v. Bettenhausen*, 460 N.W.2d 394, 397, 2 A.L.R.5th 1127 (N.D. 1990) (license once suspended remains so until reinstated); *Colorado Dep't of Revenue, Motor Vehicle Div. v. Brakhage*, 735 P.2d 195, 197 (Colo. 1987) (driver committed a violation after period of suspension expired but before meeting requirements for restoration, suspension continued until compliance with the statutory requirements); *State v. Zalta*, 217 N.J. Super. 209, 212-13, 525 A.2d 328 (1987) (suspension continues until actual restoration of license).

Still other jurisdictions take an opposite view, holding that once the period of suspension or revocation has run, the motorist cannot be cited for driving with a suspended or revoked license. *See State v. Gasser*, 29 Ohio App. 3d 115, 504 N.E.2d 73 (1985). In *Gasser*, the motorist did not comply with the financial responsibility requirements at the end of the revocation period, but began driving again and was eventually cited for driving while license suspended. The court held that the State failed to show that Gasser's license was still suspended on the date in question. *Gasser*, 504 N.E.2d at 75; *see also State v. Dyson*, 518 N.E.2d 812, 813 (Ind. Ct. App. 1988) (driver could not be convicted for driving with license suspended after the period of suspension had expired).

In Washington, under RCW 46.65, once the period of revocation is no longer in effect, a driver may petition the DOL to reinstate his or her license. RCW 46.65.100 requires the driver to petition the DOL for restoration, at which time the DOL will reinstate "for good cause shown."[4] Not provided for, however, is the status of the driver's license

---

[4]This court has found that the "good cause" requirement, although a general standard, provides enough of a framework for the DOL to restore someone's

prior to petitioning for reinstatement. RCW 46.04.480 defines the term "revoked," as:

> "Revoke," in all its forms, means the invalidation for a period of one calendar year and thereafter until reissue: *Provided*, That under the provisions of . . . chapter 46.65 RCW the invalidation may last for a period other than one calendar year.

(Emphasis added.)

■ ■ Here, neither Danner nor Campbell petitioned to have his license reinstated after the period of revocation had run. Every word of a statute is to be given meaning. *See Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 479, 745 P.2d 1295 (1987). Therefore, the requirement of "petition[ing] the department of licensing for restoration" is a prerequisite to having a license reinstated. RCW 46.65.100. Thus, Danner and Campbell's licenses remain revoked until they petition for reinstatement.

This position is also consistent with other statutory provisions. RCW 46.20.342 describes the various degrees of driving with a suspended or revoked license. Section(1)(a), quoted above, specifies the first degree offense. Section (1)(b) specifies the second degree offense, and section (1)(c) specifies the third degree offense. Section (1)(c) states:

> A person who violates this section when his or her driver's license or driving privilege is, at the time of the violation, suspended or revoked solely because . . . (v) the person has been suspended or revoked by reason of one or more of the items listed in (b) of this subsection, but was eligible to reinstate his or her driver's license or driving privilege at the time of the violation . . . is guilty of driving while license suspended or revoked in the third degree, a misdemeanor.

RCW 46.20.342(1)(c); Laws of 1992, ch. 130, § 1 (1992) (amended 1993).

■ ■ Noticeably absent is a similar provision classifying the offense to a lesser degree for a person with a

---

driving privileges. *State v. Malone*, 9 Wn. App. 122, 129-30, 511 P.2d 67, *review denied*, 82 Wn.2d 1011 (1973).

revoked license pursuant to (1)(a), eligible to *petition* to have his or her license returned but who has not done so at the time of the new violation. Generally, the inclusion of an express exception in a statute suggests the Legislature's intent to exclude other exceptions. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 133-34, 814 P.2d 629 (1991); *State v. Shove*, 113 Wn.2d 83, 87, 776 P.2d 132 (1989). Therefore, we hold that a violation after the mandatory revocation period has run, but before the driver has complied with reinstatement requirements, would continue to be a first degree violation.[5] A contrary interpretation would create the absurd result that a second degree offense would become a third degree offense once the period of expiration has run, while a first degree offense would no longer be a citable offense. *Jones v. Stebbins*, 122 Wn.2d 471, 481, 860 P.2d 1009 (1993) ("A statute should be given a reasonable construction to avoid absurd or strained consequences.") Moreover, to conclude otherwise, would offer a driver with a revoked license little motivation to comply with reinstatement requirements.[6] *See State ex rel. Faulk v. CSG Job Ctr.*, 117 Wn.2d 493, 500, 816 P.2d 725 (1991) (court should avoid strained, unlikely or unrealistic interpretations when construing a statute).

Therefore, the Legislature's exclusion of (1)(a) offenses in (1)(c), where the period of revocation has run but the driver has failed to have his or her license reinstated, must be interpreted as being a deliberate exclusion. Thus, a (1)(a) violation continues to be a first degree offense until the driver has petitioned and the DOL has reinstated the HTO's license.

---

[5]The legislative history of the 1992 amendment supports this view. Senate Bill included the RCW 45.20.342(1)(b) in the third degree offense category for those eligible to have their license reinstated, but who have not yet done so. None of the Senate bill drafts ever included subsection RCW 45.20.342(1)(a) violations in the reduced offense class.

[6]One other jurisdiction has noted the difference between a "suspended" license as opposed to a "revoked" license. *See State v. Brude*, 222 N.W.2d 296 (N.D. 1974). The *Brude* court held that at the end of the period of a suspension, the license is automatically restored, whereas with a revoked license, the revocation continues until the license has been restored. *Brude*, 222 N.W.2d at 297. This argument is persuasive in light of RCW 46.04.480.

■ Finally, the State argues that the "[r]ule of [l]enity" does not apply. *See State ex rel. McDonald v. Whatcom County Dist. Court*, 92 Wn.2d 35, 37-38, 593 P.2d 546 (1979) (ambiguous criminal statute must be resolved in favor of criminal defendant). We agree. A statute is ambiguous if it is susceptible to more than one meaning. *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). The statutes here are not ambiguous. The Legislature's intent is evident upon reading the statutes in their entirety. Therefore, for the reasons stated above, the licenses remain revoked until the drivers have petitioned for reinstatement, and the DOL has issued the license.

Reversed and remanded.

MORGAN and BRIDGEWATER, JJ., concur.