

2014 NOV 24 AM 9: 11

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

      Respondent,

  v.

MILES DAVIS MORRISON,
a.k.a. MILES DAVID MORRISON,

      Appellant.

DIVISION ONE

No. 70642-0-I

UNPUBLISHED OPINION

FILED: November 24, 2014

DWYER, J. — Following a jury trial, Miles Morrison was convicted of unlawful possession of a controlled substance (methamphetamine) and driving while license suspended or revoked in the first degree (DWLS I). He now appeals, contending that insufficient evidence was adduced at trial to support his conviction for DWLS I. We affirm.

I

On December 11, 2012, Whatcom County Sheriff's Deputy Todd Walcker stopped Morrison for driving his motorized scooter on a closed portion of a road near the Slater Road bridge, which was closed for repairs. Morrison was wearing a bicycle helmet instead of a Department of Transportation-approved motorcycle helmet and the scooter had expired license tabs. Walcker stopped the scooter and asked Morrison to provide his license and registration. Morrison replied that he did not have his license but gave Walcker his name.

Walcker ran a routine check using Morrison's name, through which he discovered that Morrison's license was "revoked in the first degree." As a result, Walcker arrested Morrison for "driving while license revoked in the first degree." After he was read his rights, Morrison told the deputy at the scene that "he was driving while [license] suspended third degree, not driving while suspended first degree." Walcker checked Morrison's license status again but it still came back as revoked in the first degree.

Morrison was charged with DWLS I.[1] At trial Wanda Knapp, a custodian of records of the Department of Licensing (DOL), testified as to Morrison's driving record. She testified that Morrison's license was revoked in the first degree in 1993 and remained revoked on December 11, 2012. Knapp also testified that a determination that Morrison was a habitual traffic offender (HTO), made on February 12, 1994, remained in effect on December 11, 2012. Finally, she testified that both the revoked status and the HTO determination would remain in effect unless Morrison took affirmative steps to change them and that, to date, Morrison had not taken the required steps.

Knapp also testified that the DOL has an obligation to provide notice to a driver if the agency takes action against a person's license to drive. She testified that the DOL uses the most current address to notify a driver, and that the driver has an obligation to keep the DOL informed as to where they live.

---

[1] He was also charged with and convicted of unlawful possession of a controlled substance (methamphetamine), in violation of RCW 69.50.4013(1).

No. 70642-0-I/3

A certified copy of Morrison's driving record was admitted as Exhibit 6. That document indicated that his "Driver license status" was: "Revoked," "DWLS/R 1st Degree" and "Habitual Traffic Offender (hearing required)." It included a copy of the original "Order of Revocation" that was sent to Morrison by certified mail. The revocation letter stated in part:

> YOUR DRIVING PRIVILEGE IS REVOKED FOR 5 YEARS AS AN HABITUAL TRAFFIC OFFENDER. . . .
>
> A HEARING REQUEST FORM IS ENCLOSED.
>
> TO REINSTATE YOUR DRIVING PRIVILEGE REFER TO PARAGRAPHS A, B, E ON THE ENCLOSED REINSTATEMENT SHEET. DO NOT DRIVE UNTIL YOU HAVE BEEN NOTIFIED OF REINSTATEMENT BY THIS DEPARTMENT.
>
> . . . I CAUSED TO BE PLACED IN A U.S. POSTAL SERVICE MAIL BOX, A TRUE AND ACCURATE COPY OF THIS DOCUMENT TO THE PERSON NAMED HEREIN AT THE ADDRESS SHOWN, WHICH IS THE LAST ADDRESS OF RECORD.

A "Habitual Traffic Offender Hearing Request" form was included with the letter.

At trial, Morrison testified and confirmed that he lived at 3937 Bay Road, Ferndale, WA 98248, which was the address listed on the first page of the DOL report. He also confirmed that he had previously lived at 5567 Maple Way, Blaine, WA 98230, which was the address listed on the order of revocation.

A jury found Morrison guilty as charged. Morrison was given a mandatory 180-day sentence.

II

Morrison asserts that the evidence at trial was insufficient to convict him of DWLS I. This is so, he contends, because "there was no evidence that the . . .

- 3 -

license-revoked status in Morrison's [DOL] records was the product of a due process-compliant revocation." We disagree.

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

RCW 46.20.342(1)(a) provides:

- 4 -

> (1) It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state. Any person who has a valid Washington driver's license is not guilty of a violation of this section.
>
> (a) A person found to be a habitual offender under chapter 46.65 RCW, who violates this section while an order of revocation issued under chapter 46.65 RCW prohibiting such operation is in effect, is guilty of driving while license suspended or revoked in the first degree, a gross misdemeanor.

To convict Morrison of DWLS I, the jury was required to find, in pertinent part, the following beyond a reasonable doubt:

> (1) That on . . . December 11, 2012, the defendant drove a motor vehicle;
> (2) That at the time of driving an order of revocation was in effect;
> (3) That the order . . . was based on a finding by the [DOL] that the defendant was a habitual traffic offender.

Jury Instruction 11.

Morrison's sufficiency challenge generally pertains to whether there was an order of revocation in effect on December 11, 2012. A revocation remains in effect "until the driver has petitioned *and* the DOL has reinstated the HTO's license"—even after the mandatory five-year period imposed pursuant to RCW 46.65. State v. Danner, 79 Wn. App. 144, 153, 900 P.2d 1126 (1995) (emphasis added). Moreover, a violation of RCW 46.20.342(1)(a) after the mandatory revocation period has run, but before the driver has complied with reinstatement requirements and been reinstated, "would continue to be a first degree violation." Danner, 79 Wn. App. at 153.

-5-

A number of sources support the finding that Morrison's license was revoked on December 11, 2012. For example, Walcker testified that he had checked the status of Morrison's license both before and after arresting him that day and that Morrison's license had come back as revoked both times. Moreover, the DOL report included a number of indications that Morrison was revoked in December 2012. For example, it included notations in several locations that Morrison's status was revoked. It also included an order of revocation from 1993. The release date corresponding to this revocation on Morrison's complete driving record read "6/11/2092," indicating that the revocation remained in effect. Knapp also testified that Morrison's license had not been reinstated and he remained revoked on December 11, 2012. Sufficient evidence was adduced by the State to prove beyond a reasonable doubt that Morrison's license was revoked on December 11, 2012.[2]

### III

Morrison bases his sufficiency challenge on his assertion that "there was no evidence that the 2012 license-revoked status in Morrison's [DOL] records was the product of a due process-compliant revocation." His challenge is off the mark.

In the context of a sufficiency challenge, our inquiry is limited to assessing whether sufficient proof was adduced with regard to the *essential elements* of the

---

[2] To the extent that Morrison's claim may be construed as challenging the sufficiency of the evidence regarding any of the other essential elements, he does not establish an entitlement to relief. Based on our review of the record, we conclude that there was sufficient evidence to support Morrison's DWLS I conviction.

charged crime. Jackson, 443 U.S. at 319. It is an essential element of DWLS I that there be a revocation in effect; it is not an essential element that the revocation in effect comply with due process. See RCW 46.20.342(1)(a). It is true that a revocation must comply with due process to be effective. See City of Redmond v. Arroyo-Murillo, 149 Wn.2d 607, 612, 70 P.3d 947 (2003) (stating, "If [a] revocation does not comply with due process, it is void"). However, this is a definitional aspect of "revocation," not an additional element of DWLS I that must be alleged in the information and included in the to-convict instruction.

Morrison argues differently, relying on statements by our Supreme Court to the following effect: "In a prosecution for [DWLS I], the State has the burden to prove that the revocation of the defendant's license complied with due process." State v. Storhoff, 133 Wn.2d 523, 527, 946 P.2d 783 (1997).

While there is some overlap in the requirements attendant on essential elements and definitions of elements, they are not coextensive. For example, due process requires that a "to convict" instruction given to a jury contain all essential elements of the charged crime. State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). By contrast, definitions of elements are not themselves essential elements that must be included in a "to convict" instruction. State v. Allen, 176 Wn.2d 611, 626-27, 294 P.3d 679 (2013). This does not mean that the State is not required to prove that an essential element meets its definition. See, e.g., Allen, 176 Wn.2d at 627, 630 (holding that the definition of a "true threat" need not be alleged in the information or included in the "to convict"

- 7 -

instruction, even though, pursuant to the First Amendment, the State is required to prove that the threat in question was a true threat).

If a defendant perceives that the prosecution's case is weak on one of the elements—for example, because the evidence adduced by the State does not meet the definition of an essential element—he may so argue to the jury. State v. Scott, 110 Wn.2d 682, 690-91, 757 P.2d 492 (1988). Moreover, he may advance his argument by requesting a definitional instruction, which the trial court may accept or reject, taking into account the relevant law and the defendant's right to present his theory of the case. Scott, 110 Wn.2d at 691. But a request *must* be made. "'No error can be predicated on the failure of the trial court to give an instruction when no request for such an instruction was ever made.'" Scott, 110 Wn.2d at 686 (quoting State v. Kroll, 87 Wn.2d 829, 843, 558 P.2d 173 (1976)).

In this case, Morrison never requested an instruction giving the definition of revocation or otherwise specifying that the "revocation in effect" must comply with due process. We, therefore, find no error in the lack of such an instruction.

Notwithstanding that fact, if the jury would have been so instructed, there was sufficient evidence from which it could have found that Morrison's revocation complied with due process. Due process requires that a license holder be given notice and an opportunity to be heard prior to his license being revoked. Arroyo-Murillo, 149 Wn.2d at 612. The notice must be "'reasonably calculated to inform the affected [sic] party of the pending action and of the opportunity to object.'" Arroyo-Murillo, 149 Wn.2d at 612 (alteration in original) (quoting State v. Dolson,

138 Wn.2d 773, 777, 982 P.2d 100 (1999)). "The requirement in RCW 46.20.205 that DOL send revocation notices to a licensee's address of record satisfies procedural due process whether or not the licensee actually receives such notice." Storhoff, 133 Wn.2d at 526 n.2.

Here, the DOL report, which was admitted without objection, contained an order of revocation that was addressed to Miles Davis Morrison at the address at which Morrison confirmed he used to live. The letter also included an attestation that it was mailed to the person named at the address shown. Moreover, Knapp confirmed that the letter was sent to Morrison at that address. Sufficient evidence was adduced by the State for the jury to have found, beyond a reasonable doubt, that the revocation of Morrison's license complied with due process.

Affirmed.

We concur:

_____

_____

_____